**GEORGIA POWER COMPANY,**
**Petitioner-Appellant,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION, Respondent-Appellee.**
**No. 26831.**

United States Court of Appeals
Fifth Circuit.
June 10, 1969.

William B. Paul, Fred W. Elarbee, Jr., Constangy & Prowell, Atlanta, Ga., for petitioner-appellant.

David R. Cashdan, Atty., Equal Employment Opportunity Commission, Daniel Steiner, Gen. Counsel, Russell Specter, Asst. Gen. Counsel, Washington, D. C., for respondent-appellee.

Before GEWIN, McGOWAN* and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

The appellant Georgia Power Company filed a petition in the United States District Court for the Northern District of Georgia seeking an order setting aside a Demand for Access to Evidence served on the company by the Equal Employment Opportunity Commission. The information sought by the demand purported to relate to a charge of sex and racial discrimination filed with the EEOC under Title VII of the Civil Rights Act of 1964.[1] In support of its petition, the company argued below that it had not been timely furnished with an adequate charge and that the EEOC's Demand was overly broad in scope.

The district court rejected the company's contentions concerning the adequacy and timeliness of the charge but modified the Demand by delimiting the scope of permissible discovery. The EEOC has not appealed from the modification of its Demand; the company, however, argues anew that the charge of discrimination was untimely and inadequate and that the district court did not sufficiently restrict the scope of the Demand. We affirm the judgment of the district court.

---

\* Judge Carl McGowan of the District of Columbia Circuit, sitting by designation.

1. 42 U.S.C. §§ 2000e to 2000e–15 (1964).

## I

The relevant facts involved in this case are undisputed. The charging party before the EEOC was a Negro female, Mrs. Neloise R. Adkins, who had applied to the company for employment on July 31, 1967. At that time, the company needed a customer representative trainee, an entry-level position in the company's customer service department. Mrs. Adkins' application was brought to the attention of the head of that department and, after an interview, an employment test was given on August 10, 1967. She took the examination, and in accordance with instructions, called the department head the following day concerning her score and employment prospects. She was told that she did not score high enough on the examination to qualify for the customer service trainee position.

In an unsworn, handwritten letter dated August 27, 1967 and addressed to Mr. Donald Hollowell, regional director of the EEOC, the charging party stated in pertinent part:

> I would like to inform you of a few experiences that I have had. First of all, I attended the Institute of Computer Technology, for Data Processing and Programming from Jan. 1967 until I finished in May, 1967 * * *.
>
> * * * * * *
>
> I went to the Georgia Power Co. and placed an application and talked to Mrs. Martin in personal [sic]. About two weeks from then, she called me and ask[ed] if I was not interested [in] a position in Customer Service. I told her yes. She then set up an appointment for me to talk to the hiring official at the Forsyth St. office. I talked to him and was interviewed by another person. I was scheduled for the test at 1:30 P.M. the same day. I took the test, and there were various parts of it, I did'nt understand. I was very confused on the last part. The test was too [two] hours [long].
>
> I was then told to call back the next day for my results. He told me that "I did'nt make quite enough for the job", but that I did'nt fail, because they don't give a numerical rating. He looked at my application and notice[d] that I had training in Data Processing and told me that they did not hire women in this field. (Aug, 1967)
>
> * * * * * *
>
> I am not pleased with the excuses and run-around that I get from these various places.
>
> I would like very much if you would look into this matter.

In addition to the appellant company, the letter detailed the charging party's "experiences" with three other companies and a private employment agency. On November 16, 1967, some ninety-seven days after the rejection of her application for employment, the charging party amended her letter charge by transferring the facts alleged to an EEOC form and by swearing to the contents. The formal charge also specifically alleged employment discrimination on account of race or sex. Seven days later, on November 23, 1967, the company was served with the formal, sworn charge. The company thereafter demanded a copy of the charging party's original letter and the EEOC supplied the company with a redacted copy, from which all identifying references to the other companies and the employment agency mentioned in the letter were deleted.[2]

---

2. The district judge examined an undeleted copy of the letter *in camera* and even permitted counsel for the company to read it. We also have examined the undeleted copy *in camera*. The company argues in a supplemental brief that, under the principles enunciated by the Supreme Court in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), an *in camera* inspection was in-

sufficient to protect its rights. There are at least two deficiencies in this argument. First, by the express terms of subsection 706(a), the company cannot have access to charges against other companies. And second, the milieu of the *Alderman* case is so alien to that of Title VII proceedings that we find the case wholly irrelevant here.

In the course of its investigation of the alleged discrimination, the EEOC served the company with a Demand for Access to Evidence, requiring the submission of the following information:

1. List of all persons presently employed by Respondent in the Customer Service and Data Processing Departments in its Atlanta facilities. Said list to include the following information for each employee:

    (a) Name, race and Sex

    (b) Date of Hire, and date of entry into these departments

    (c) Classification or job title

    (d) Test score of each such employee.

2. A copy of the following documents for Mrs. Neloise R. Adkins:

    (a) Application for employment

    (b) All tests administered to her

    (c) The test scores for each test.

3. A copy of the following documents for all persons hired in or who entered into the Customer Service and Data Processing Departments from May 29, 1967 to November 29, 1967:

    (a) Application for employment

    (b) All tests administered to each such person

    (c) The test score for each such test.

4. A copy of the job descriptions for all entry level positions in the Customer Service and Data Processing Departments in effect during the period from May 29, 1967 to November 29, 1967.

5. Any additional documents in the custody or control of Respondent, Georgia Power Company, which reflect the information requested by the United States Equal Employment Opportunity Commission in this Demand.

The company petitioned the district court on June 3, 1968, for an order (1) setting aside the Demand on the ground that an adequate and timely charge had not been filed with the EEOC and (2) limiting the scope of the Demand. The EEOC answered and cross-petitioned for an order enforcing the Demand. The district court rejected the company's attack on the validity of the charge served on the company. However, the court agreed with the company that the Demand was unduly broad in some respects and, accordingly, narrowed the scope of the Demand. The court held that the Demand should be limited geographically to the company's Atlanta facilities and temporally to the five-year period prior to the alleged discrimination. In addition, the court held that the Demand must be limited to non-supervisory employees. Thus the court delimited Demand No. 1 to information concerning non-supervisory personnel in the Atlanta area from August 11, 1962, and eliminated Demand No. 5 as being impermissibly broad and vague.

## II

The company's attack on the charge filed with the EEOC is basically twofold: (1) assuming that the charging party's original letter was timely, the company contends that the letter was not, for various reasons, adequate; and (2) assuming that the formal charge was adequate, that charge was neither timely nor a legitimate amendment of the letter.

The adequacy of the original letter as a charge is impugned on a number of grounds. The primary basis of attack stems from the fact that, under subsection 706(a) of the Act, the EEOC could not serve the company with a copy of the letter without deleting references to other charged parties. Subsection 706(a) makes it a misdemeanor for "[a]ny officer or employee of the Commission who shall make public in any manner whatever" a charge filed with the EEOC.[3] Pointing out that the same subsection of the Act states that "the Commission shall furnish such employer * * * with a copy of such charge," the company argues that the informal letter could not

---

3. 42 U.S.C. § 2000e–5 (1964).

suffice because it could not be furnished to the company as written by the charging party.

■ We cannot agree with this contention because, among other things, we think that the company was served with the entirety of the charge against it. The charging party's letter related to four business establishments other than the appellant company; thus the letter was not a single charge but rather multiple charges made together. The mere fact that the charges were contained in an integrated instrument does not entitle the company to be served with charges against other companies. Thus it is clear that the portion of the charging party's letter relevant to the company could have been served as written. The company's argument that it might be advantageous to know the names of other charged parties should be addressed to Congress; before this tribunal, subsection 706(a) concludes the matter.

■ The opinion of this court in Weeks v. Southern Bell Tel. & Tel. Co.[4] completely dissipates the company's argument that the charging party's letter was ineffective as a charge because it was unsworn. The court in *Weeks* approved the EEOC's regulation governing amendments to charges. Subsection 1601.11(b) of the regulations states in part:

[A] charge is deemed filed when the Comission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge

may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date.[5]

This regulation likewise disposes of the company's contention that the letter is not a proper charge because it did not charge "that any company mentioned therein had violated any law." The charging party's letter is "sufficiently precise to identify the parties and to describe generally the action or practices complained of"; therefore, it is adequate for the notice purpose it was intended to serve. We have already defined, in another context, the adequacy of Title VII charges:

For a lay-initiated proceeding it would be out of keeping with the Act to import common-law pleading niceties to this "charge" or in turn to hog-tie the subsequent lawsuit to any such concepts. All that is required is that it give sufficient information to enable EEOC to see what the grievance is all about.[6]

■ The company's last-gasp attack on the efficacy of the charging party's letter deserves little attention. It argues that the letter was addressed to Mr. Hollowell and "[f]rom all that appears of record in this case, the letter may have been sent to Mr. Hollowell at his residence address as a private individual." How a charging party goes about putting a charge in the hands of the EEOC is wholly irrelevant to any right of the company. Since the EEOC receives more charges than it can han-

---

4. 408 F.2d 228 (5th Cir. 1969); *see* Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

5. 29 C.F.R. § 1601.11(b) (1966).

6. Jenkins v. United Gas Corp., 400 F.2d 28, 30 n. 3 (5th Cir. 1968). *See* 1 Davis, Administrative Law Treatise § 8.04, at 523 (1958):

The most important characteristic of pleadings in the administrative process is their unimportance. And experience

shows that unimportance of pleadings is a virtue.

The company argues broadly that Title VII must be strictly construed because it is in derogation of the common law. Whatever efficacy that old bromide may have in other areas of law, it is clearly inapplicable to the socially remedial statute involved here. *See* Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed, 3 Vand.L.Rev. 394, 401 (1950).

dle,[7] it is hardly impelled to foist innocuous private correspondence off as official charges. In any event, any private appearance which the letter might have had was a technical defect curable by amendment under the regulation quoted above.

Under subsection 706(d), a Title VII charge must be filed within ninety days after the alleged unlawful employment practice occurred.[8] There is no question that the charging party's original letter was filed within the prescribed time. Since we have concluded that the letter was a valid amendable charge, the company's timeliness contention necessarily falls. The formal charge which replaced the letter obviously states nothing more than the substance of the events stated in the letter.[9] Therefore,

the formal charge relates back to the date of the original charge.[10] Accordingly, we hold that the company was properly served with an adequate and timely charge.

## III

In support of its contention that the EEOC's Demand should be limited further, the company argues that the scope of the EEOC's investigatory authority is severely restricted. The basis of this argument is the change, effected by the Mansfield-Dirksen amendments,[11] in the description of the EEOC's investigatory authority. As originally drafted and as passed by the House of Representatives, the Act granted the EEOC investigatory powers substantially commensurate with those of the Federal Trade Commission.[12] However, the bill

7. *See* Miller v. International Paper Co., 408 F.2d 283, 288 n. 22 (5th Cir. 1969).

8. 42 U.S.C. § 2000e–5(d) (1964).

9. The formal charge states in pertinent part:

A. Some time during the month of August 1967, I completed an application for employment with the Georgia Power Company. I was called in relative to a position in Customer Service. The hiring official at the Forsyth Street office interviewed me and I was tested the same day. Having been told to call the next day, I did, and was told I did not fail. The fact that I was trained in data processing was noted by interviewer, and I was told they (Georgia Power) did not hire women in that field.

B. I feel these to be discriminatory acts because of race (Negro) and sex. This is an amendment incorporating the original charge filed with the Commission August 29, 1967.

10. 29 C.F.R. § 1601.11(b) (1966). With regard to limitation periods, the company has voiced one valid concern, *viz.*, that the EEOC may not give a charged party notice of a pending charge within a reasonable time. While the Act provides that a charging party has ninety days from the date of the unlawful employment practice within which to file a charge, there is no time prescribed within which the EEOC must serve a copy of the charge upon the company. We therefore infer that service of the charge must be made

within a reasonable time after receipt by the EEOC. The company in the instant case was served with the formal charge on November 23, 1967, seven days after the letter charge was amended and eighty-six days after the letter was filed with the EEOC. In the circumstances of this case, we think that the EEOC acted with reasonable diligence. It may be noted, however, that the determination of reasonableness is an ad hoc matter; thus the EEOC would be well advised to furnish the charged party with a copy of the original charge immediately with a notation that a formal charge will be forthcoming.

11. For a partial delineation of Title VII's legislative history, see Miller v. International Paper Co., 408 F.2d 283, 286–287 (5th Cir. 1969).

12. See BNA, The Civil Rights Act of 1964; Text, Analysis Legislative History 147–48 (1964) (hereinafter cited as BNA). Subsection 710(a) of the bill passed by the House stated:

For the purposes of any investigation provided for in this title, the provisions of sections 9 and 10 of the Federal Trade Commission Act of September 16, 1914, as amended (15 U.S.C. 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Commission, except that the provisions of section 307 of the Federal Power Commission Act shall apply with respect to grants of immunity, and except that the attendance of a witness may not be required outside the State where he

finally enacted into law contained a narrower grant of authority. Subsection 710(a) of the Act, which sets out the EEOC's investigatory powers, states in part:

> For the purposes of any investigation of a charge [of discrimination] * * * the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation.[13]

The company appears to be correct that the reason for this legislative change was the fear of some senators—particularly Senator Dirksen—that the House-passed version would permit "fishing expeditions" by the EEOC.[14]

However, our agreement with the company stops here, for we think that the information required by the amended Demand is clearly relevant to the charge under investigation. The company contends that the only relevant data were "the records and information pertaining to Mrs. Adkins, together with such records and information pertaining to the individual who was hired in preference to Mrs. Adkins." Certainly this information is relevant, but we cannot agree that it was the only relevant evidence. Discrimination on the basis of race or sex is *class discrimination*. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals.

The contention that the EEOC should not have access to data concerning employment positions other than the one applied for by the charging party is without merit. Comparative evaluation of job qualifications is obviously essential to the EEOC's task. To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices. Thus we think it clear that information concerning other positions is relevant to the investigation. Moreover, the amendments to the Demand made by the district court narrowed the discovery to a reasonable breadth. The court limited the Demand geographically, temporally, and in scope. The Demand as amended is reasonable and is limited to relevant information. It should, therefore, be enforced.

The judgment of the district court is affirmed.

---

is found, resides, or transacts business, and the production of evidence may not be required outside the State where such evidence is kept.

13. 42 U.S.C. § 2000e—9(a) (1964). Subsection 709(a) which relates to authority to examine and copy evidence, states:

> In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.
> 42 U.S.C. § 2000e–8 (1964).

14. *See, e. g.,* BNA at 294, 3004, 331–32; Comment Enforcement of Fair Employment Under the Civil Rights Act of 1964, 32 U.Chi.L.Rev., 430, 437 (1965).