**PARLIAMENT HOUSE MOTOR HOTEL,**
Petitioner-Appellee,

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent-Appellant.**

**WESTMINISTER HOUSE RESTAURANT AND LOUNGE AND GUEST HOUSE MOTEL, Petitioner-Appellee,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent-Appellant.**

No. 30568.

United States Court of Appeals,
Fifth Circuit.

July 7, 1971.

David W. Zugschwerdt, Atty., Stanley P. Hebert, Gen. Counsel, Russell Specter, Julia P. Cooper, Deputy Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., for appellant.

C. A. Powell, III, C. John Holditch, Birmingham, Ala., for Parliament House Motor Hotel.

George V. Eyraud, Jr., Birmingham, Ala., for Westminister House Restaurant and Lounge and Guest Motel.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOOTLE, District Judge.

THORNBERRY, Circuit Judge:

Parliament House Motor Hotel, Westminister House Restaurant and Lounge, and Guest House Motel, appellees,[1] filed petitions in the United States District Court for the Northern District of Alabama seeking orders setting aside Demands for Access to Evidence served on them by the Equal Employment Opportunity Commission. The information sought by the Demands purported to relate to charges of racial discrimination filed with the EEOC under Title VII of the Civil Rights Act of 1964.[2] In support of the petitions, appellees asserted that the charges of discrimination were insufficiently precise to invoke the pro-

---

1. Parliament House Motor Hotel, Westminister House Restaurant and Lounge, and Guest House Motel are located in Birmingham, Alabama.

2. 42 U.S.C. §§ 2000e to 2000e–15 (1964).

cedures of Title VII and that the EEOC's Demands were overly broad in scope. The district court determined that the charges were sufficient to trigger the EEOC's investigative procedures but modified the Demands by delimiting the scope of permissible discovery. Parliament House, Westminister House, and Guest House have not challenged the district court's decision. The EEOC, however, contends that the lower court improperly modified and limited the Demands.

I.

The instant controversy is comprised of two actions, the Parliament House matter and the Westminister House-Guest House matter, which were consolidated and considered together by the district court. In the following discussion we have chosen to separate the two actions in the interest of clarity.

A.  The Parliament House Matter

On January 20, 1969, Eloise Robinson, a Negro waitress in that portion of Parliament House's business known as "The Sidewalk Cafe," filed a charge of racial discrimination against Parliament House with the EEOC pursuant to 42 U.S.C.A. § 2000e–5(a). In pertinent part the charge stated, "I, Eloise Robinson, was employed at the Parliament House Motor Hotel at 420–South 20th Street, Birmingham in October, 1968. Since my employment, I along with other Negro employees have not been promoted above our present positions. As of now, I am still a waitress and other Negro employees are not being promoted above positions such as porter, dish-

washers, bus boys, and maids. Yet, White employees can be hired off the street for any desired position. Although no Negro has applied for any other job, I feel if there is a vacancy they should be given an opportunity to get these positions.

"For reasons stated above, I believe that I and others have been discriminated against because of race."

The formal, sworn charge was served upon Parliament House's General Manager on March 12, 1969.[3] In the course of its investigation of the alleged discrimination, the EEOC, after Parliament House had declined to furnish the Commission with certain information, served appellee with a Demand for Access to Evidence, requiring the submission of the following information:

"I.  Any and all records in the care, custody, and control of the Parliament House Motor Hotel which reflect written job descriptions, specifications, or qualifications for employment. If there are no such written descriptions, the Commission demands the privilege of examining under oath the person who is authorized to evaluate applications and to hire and promote employees.

"II.  Any and all records which the Parliament House Motor Hotel has in its possession, custody, or control, which reflect the names, addresses, and racial identity of each person hired since September 1, 1968 and which reflect promotions since September 1, 1968."

On April 11, 1969, Parliament House petitioned the district court for an order (1) setting aside the Demand on the ground that the charge " * * * whol-

3.  After the charge was served, Parliament House requested that the EEOC "clarify" it. The Commission refused to alter the complaint, taking the position that the charge is an adequate statement of the party's allegations and speaks for itself. During oral argument before this Court, the EEOC contended that information more specific than that articulated by complainant Robinson is simply not available to the average employee and that

to require the Commission, prior to an investigation of a party, to amplify a valid charge is to require of it information that it usually does not possess. The imposition of such a requirement, the EEOC argues, would effectively frustrate the Commission's role under Title VII. *See* Local No. 104, Sheet Metal Workers Intern'l Ass'n, A.F.L.–C.I.O. v. E.E.O.C., 9th Cir. 1971, 439 F.2d 237.

ly fails to allege any act of discrimination but, to the contrary, discloses on its face that no unlawful employment practice has occurred," and (2) limiting the scope of the Demand. The EEOC answered and cross-petitioned for an order enforcing the Demand. Although the district court rejected the attack on the validity of the charge, a determination not here challenged, the court accepted appellee's contention that the Demand was unduly broad. Noting that complainant Robinson was employed in "The Sidewalk Cafe" sphere of appellee's business, the trial court determined that the only records relevant to the charge were those concerning that one department.

**B. The Westminister House-Guest House Matter**

On January 6, 1969, Willie Lee Harris, a Negro, filed a charge of racial discrimination with the Commission, alleging that Westminister House, which was wholly owned by Guest House, had, because of his race, discharged him (on December 26, 1968) from his employment as a pot washer. The charge, which was not verified by oath at the time of filing, was perfected on March 11, 1969, and served upon the Resident Manager and Manager, respectively, of Westminister House and Guest House on March 13 and 14, 1969. When the parties refused to grant the Commission access to any employment records other than those of Harris, the EEOC served both parties with a Demand for Access to Evidence, requiring the submission of the following information:

"I. Any and all records which Westminster House Restaurant & Lounge (also known as The Guest House) has in its possession, custody, or control which would,

a) reflect names, addresses, racial identity, job title, and rates of pay of each employee of the Westminster House who is below the management level;

b) the date, if any, on which each employee was absent from work from the period June 1, 1968 to the present time;

c) all personnel actions taken by the Westminster House Restaurant & Lounge, including discharges and reprimands, from June 1, 1968 to the present time.

II. The most recent standard form 100 (EEO–1–1 Report).

III. Any document evidencing a sale [by] the Guest House Restaurant [of] the Westminster House Restaurant and Lounge.

IV. The Equal Employment Opportunity Commission further demands the privilege of examination under oath the person or persons having the care, custody, and control, of the above-described records, or the person who implements the personnel policies of the Westminster House Restaurant & Lounge, in the absence of such documents."

On April 11, 1968, Westminster House and Guest House petitioned the district court for an order (1) setting aside the Demand on the ground that the charge " * * * wholly fails to allege any act of discrimination * * * [and] fails to 'set forth the facts upon which it is based * * *,' " and (2) limiting the scope of the Demand. The EEOC answered and cross-petitioned for an order enforcing the Demand. The district court upheld the validity of the charge, a ruling not here challenged, but limited the Demand to records held by Westminister House. In addition to excluding Guest House from the inquiry, the district court refused to grant the EEOC permission to discover documents evidencing a sale of Westminister House by Guest House.

## II.

The sole question presented in this appeal is whether the EEOC's De-

mands were improperly modified and limited by the district court. We begin our consideration of this question by focusing on the Commission's investigatory powers, which are set forth in the following two sections of Title VII: [4]

Section 709(a). In connection with any investigation of a charge filed under section 706, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation. [42 U.S.C. § 2000e–8(a).]

Section 710(a). For the purposes of any investigation of a charge filed under the authority contained in section 706, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation. [42 U.S.C. § 2000e–9(a).]

While the EEOC cannot engage in a "wholesale fishing expedition," it is clearly entitled to discover any information relevant to the charge under investigation. The query is whether this standard was properly applied in the proceeding below.

## III.

### A. The Parliament House Matter

Viewing complainant Robinson's charge of racial discrimination as limited to Parliament House's hiring and promotion policies in its Sidewalk Cafe department, the district court refused to order the production of information relating to any employees other than those employed in that department. The EEOC argues that the lower court's determination of relevance was predicated on an unduly narrow construction of the scope of the charge. We agree. Once a charge of discrimination has been held sufficient to invoke the procedures of Title VII, the court must very carefully scrutinize the charge to determine the complete substance of the aggrieved party's allegations. Often, of course, the charge will not constitute a textbook example of precision pleading, but courts have refused to exalt form over substance in the area of civil rights.[5] Mindful of the "remedial and humanitarian underpinning" of Title VII,[6] and in the belief that the Civil Rights Act of 1964 was designed "to protect the many who are unlettered and unschooled in the nuances of literary draftmanship" and that "it would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected * * *," this Court has held that "[a]ll that is required [of a charge] is that it give sufficient in-

4. The history of the enabling legislation granting investigatory power to the EEOC is found in BNA, The Civil Rights Act of 1964: Text, Analysis, Legislative History (1964). The differences between the House Bill and that of the Senate are articulated in appendix C-1 at 289, 292–95, Dirksen explanation; C-2 at 297, 300–04, Humphrey explanation; and C-3 at 305, 311–16, comparative analysis by Congressman McCulloch.

5. As we noted in Sanchez v. Standard Brands, Inc., 5th Cir. 1970, 431 F.2d 455, 461, courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party. It has been held, for example, that a class action can be maintained under

the Act even though only one member of the class has filed a charge of discrimination. Miller v. International Paper Co., 5th Cir. 1969, 408 F.2d 283; Oatis v. Crown Zellerbach Corp., 5th Cir. 1968, 398 F.2d 496. In addition, courts have held that the statutory requirement that a charge of discrimination be "under oath" can be satisfied by verification after the expiration of the ninety-day period. Blue Bell Boots, Inc. v. E.E.O.C., 6th Cir. 1969, 418 F.2d 355; Georgia Power Co. v. E.E.O.C., 5th Cir. 1969, 412 F.2d 462; Weeks v. Southern Bell Telephone and Telegraph Co., 5th Cir. 1969, 408 F.2d 228; Choate v. Caterpillar Tractor Co., 7th Cir. 1968, 402 F.2d 357.

6. Sanchez v. Standard Brands, Inc., 5th Cir. 1970, 431 F.2d 455, 460.

formation to enable EEOC to see what the grievance is all about."[7] Jenkins v. United Gas Corporation, 5th Cir. 1968, 400 F.2d 28, 30 n. 3; Georgia Power Company v. Equal Employment Opportunity Commission, 5th Cir. 1969, 412 F.2d 462, 466. Construed in this light, we believe complainant Robinson's charge reveals not a charge of departmental discrimination but one of facility-wide discrimination, i. e., that Parliament House hires Negroes into service positions traditionally allocated to Negroes and, after hiring them, neither promotes them nor considers them for promotion. It is true, of course, that Robinson stated that she had been hired as a waitress in the Sidewalk Cafe and, because of her race, had not been promoted, but her complaint was not limited to that allegation. She also stated that Negro employees, in contrast to white employees who "can be hired off the street for any desired position," are not being promoted above positions such as porter, dishwashers, bus boys, and maids." Since only one of the aforementioned categories—that of bus boy—is utilized in the Sidewalk Cafe department of Parliament House, we are simply unable to conclude that the charge of racial discrimination relates solely to that department. In our opinion the tenor of the charge relates to facility-wide discrimination. It follows that the Commission's Demand, which is limited to evidence relative to the charge of facility-wide discrimination under investigation, should be enforced in full.

### B. The Westminister House-Guest House Matter

■ In regard to the Westminister House-Guest House matter, the district court held that " * * * since the charging party was an employee of Westminister House, and because Guest House now owns no interest in Westminister House,[8] investigation by the EEOC should be limited to the records and officials of the Westminister House Restaurant and Lounge. Further, for the same reasons, the court feels that item

---

7. The Act is silent with respect to the details of filing a charge except for the commandments that the charge be filed "in writing" and "under oath," 42 U.S. C.A. § 2000e–5(a), and "within ninety days after the alleged unlawful employment practice occurred," 42 U.S.C.A. § 2000e–5(d). The EEOC, however, has issued, inter alia, the following regulation concerning the filing of charge:

"(a) Each charge should contain the following:

(1) The full name and address of the person making the charge.

(2) The full name and address of the person against whom the charge is made (hereinafter referred to as the respondent).

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practice.

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be.

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local authority charged with the enforcement of fair employment practice laws, and, if so, the date of such commencement and the name of the authority.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date. However, an amendment alleging additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge will be permitted only where at the date of the amendment the allegation could have been timely filed as a separate charge."
29 C.F.R. § 1601.11.

8. In its petition to set aside the EEOC's Demand, Guest House alleged that it had sold its interest in Westminister House in February of 1969, approximately one month after Harris filed his charge.

III of the demand for access, requesting documents 'evidencing a sale [by] the Guest House Restaurant of the Westminister House Restaurant and Lounge' should not be allowed." We disagree. The record indicates that at the time the charge was filed Westminister House was wholly owned by Guest House. The two parties utilized common managers and, apparently, an employee exchange system. It appears, then, that the two may well have constituted a single employer at the time the alleged act of discrimination occurred. Accordingly, we believe it evident that the EEOC may demand of Guest House any information relevant to the charge filed by complainant Harris. It is also entitled to discover the information requested in Item III, information that will identify with precision the party with whom conciliation efforts, if appropriate, should be undertaken.

For the reasons expressed above, the portions of the decision below modifying and limiting the EEOC's Demands for Evidence are reversed, and the causes are remanded with instructions to enter orders consonant with this opinion.