Claxton L. BURNS, on behalf of himself and others similarly situated, Plaintiff-Appellant,

v.

THIOKOL CHEMICAL CORPORATION, Defendant-Appellee.

No. 71–3426.

United States Court of Appeals, Fifth Circuit.

July 19, 1973.

Rehearing and Rehearing En Banc Denied Oct. 26, 1973.

U. W. Clemon, Birmingham, Ala., for plaintiff-appellant.

C. W. Stelzenmuller, Birmingham, Ala., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case demonstrates once again that "the shortest way around is often the longest way through." Webb v. Standard Oil Co., 5 Cir., 1971, 451 F.2d 284, 285.

Suit was filed by the appellant Burns under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. and 42 U.S.C.A. § 1981,[1] against his former employer, the Thiokol Chemical Corporation, both in an individual capacity and as a "private attorney-general" representing a class of aggrieved Blacks. The complaint sought appropriate declaratory and injunctive relief against Thiokol because of its alleged discriminatory promotion policies against the class and specific relief on behalf of Burns in this regard. It also sought damages for the Company's alleged failure to grant medical treatment to Burns after he sustained minor injuries during the course of his employment, and, finally, reinstatement with back pay due to the Company's reprisal discharge of Burns.

After trial on the merits, the District Court entered findings of fact and conclusions of law holding against Burns in every respect. On appeal, Burns asserts that the trial court erred in (i) sustaining Thiokol's objections to certain F.R. Civ.P. 33 pre-trial interrogatories, (ii) holding that the evidence would not support a finding of class discrimination, and (iii) holding that Burns' discharge was for poor work rather than in reprisal for his registering of complaints against the Company's alleged discriminatory practices.

Finding Burns' first contention to be exceedingly meritorious, we reverse and remand the case for a new trial.

### A Gadfly In The Porridge

Neither party challenges the factual accuracy of the statement that over the course of his fourteen years in the employ of Thiokol, Claxton Burns developed "bad chemistry" with management. Indeed, both parties seek to use this fact to their advantage. Thiokol expends a considerable amount of space in its brief urging that not only did Burns develop such caustic personality and attitudinal traits that he became incapable of adequately performing his job, but also that he was a bellicose maverick without sufficient rapport with his fellow Black workers to represent them as a class.

The District Court found that Burns' attitude and his actions were anathema to the management of Thiokol. The Court also held that Burns was discharged, not because of his race, but because he spread false rumors around the business community about Thiokol's alleged failure to render medical aid to him after he collapsed as a result of

[1]. In Sanders v. Dobbs Houses, Inc., 5 Cir., 1970, 451 F.2d 1097, we held that the pre-existing, non-vivified remedy under this section of the Civil Rights Act of 1866, was not pre-empted by the passage of Title VII ninety-eight years later. *Accord*, Waters v. Wisconsin Steel Works, 7 Cir., 1970, 427 F.2d 476.

working with some chemicals on November 21, 1968 in violation of a Company rule.[2] Normally, this finding would be entitled to the protection of the "buckler and shield" of F.R.Civ.P. 52(a). Because we hold here, however, that the Court's view of the context of the case was necessarily circumscribed by its own restrictive policy towards Burns' discovery efforts, the issue must be tried again. See note 10, *infra*.

2. Company Rule 2, of Group A provides that,

   "EMPLOYEES SHALL NOT:

   .     .     .     .     .

   2. Make willfully false, slanderous, libelous, or otherwise malicious or degrading statements about the Corporation, its policies, employees, products, or performance which tend to bring the Corporation into public disrepute."

   Burns points out, however, that he is the only employee of Thiokol to ever be discharged for violating the rule. Because we reverse on the basis of unduly restrictive discovery rulings we need not reach the merits of the Company's contention and Burns' rejoinder in this respect.

3. Rule 33 provides, in pertinent part, as follows:

   (a) Availability; Procedures for Use. Any party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party. Interrogatories may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

   Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon that defendant. The

## Discovery

In an effort to amass statistical evidence and define the contours of his case, Burns propounded interrogatories to Thiokol under F.R.Civ.P. 33[3] on May 14, 1970. Among other things, the interrogatories sought information regarding the name, age, sex, educational background, and employment history of all white employees at Thiokol's Huntsville plant dating from January 1, 1960;[4] a

court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

   (b) Scope; Use at Trial. Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the extent permitted by the rules of evidence.

   An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.

   The permissible scope of interrogatories under Rule 33 is governed by the provisions of F.R.Civ.P. 26(b) which says:

   (b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

   (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

4. "9. List the name, age, address, sex, and school years completed by/of each white person hired by the Company at its

list of both permanent[5] and temporary[6] job vacancies within the Huntsville plant and background information on both those applicants who competed for the jobs and those who were selected; and a job description of each non-bargaining unit job at the Huntsville plant.[7] The Company filed timely objection to these interrogatories contending, *inter alia*,[8] that they sought irrelevant information and that they would be unduly burdensome to answer. Because the District Court sustained these objections in an oral, unrecorded order, we are unable to determine which—if either—of these grounds for objection was the basis for its decision. But it matters not, for neither will suffice on this record.

The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed. Hickman v. Taylor, 1947, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451, 460; Schlagenhauf v. Holder, 1964, 379 U.S. 104, 114–115, 85 S.Ct. 234, 240, 13 L. Ed.2d 152, 161–162.

Because discovery matters are committed almost exclusively to the sound discretion of the trial Judge, appellate rulings delineating the bounds of

---

Huntsville plant since January 1, 1960 and presently employed by the Company and with respect to each such employee state

   (a) date of initial employment;

   (b) all job classifications held since date of initial employment, including present job classification;

   (c) date of each job classification change;

   (d) plant age;

   (e) department age;

   (f) line of promotion age.

5. 10. List each permanent vacancy which has occurred in each job classification at the Huntsville plant since January 1, 1960 and with respect to each such vacancy state

   (a) date of each such vacancy;

   (b) name, race, date of initial hire, department, job classification, all seniority dates of each person who bid for the vacancy;

   (c) name of successful bidder;

   (d) whether the successful bidder had previously worked in the job posted for bid, and, if so, dates worked in job posted for bid.

6. 11. List each temporary vacancy of eight (8) hours or more which has occurred in each job classification in the Huntsville plant since July 1, 1964 and with respect to each such vacancy state

   (a) reason for the vacancy, and length thereof;

   (b) name and race of each employee who filled the vacancy;

   (c) all seniority dates of persons filling the vacancy;

   (d) prior job status of employee filling the vacancy;

   (e) length of time employee remained in the vacancy;

   (f) subsequent and current status of the employee who filled the vacancy.

7. 18. State the job description of each non-bargaining unit job at the Company's Huntsville plant; the wage rates for each such job; and the name, address, age, race, sex, present position, and prior job classification of each employee currently employed in a non-bargaining unit position. Also indicate the date on which each such person holding a nonbargaining unit position was entered his present position."

8. Thiokol's copious grounds for objection included the argument that the interrogatories called for immaterial, irrelevant, and incompetent *evidence*, and *evidence* not embraced within the issues involved in the trial of the case. Obviously, Thiokol failed to take account of the difference in degrees between the quantum of "relevancy" which will support an effort to discover background information and the more demanding degree of "relevancy" exacted by the trial Judge at the evidentiary tender, as reflected by the statement in Rule 26(b) that "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Ultimate admissibility is simply not the test for relevancy of material to be discovered. Freeman v. Seligson, 1968, 32 U.S.App. D.C. 56, 405 F.2d 1326, 1335.

discovery under the Rules are rare. But the Judge's discovery rulings, like his other procedural determinations, are not entirely sacrosanct. If he fails to adhere to the liberal spirit of the Rules, we must reverse. See Wallin v. Fuller and Nationwide Mutual Insurance Co., 5 Cir. 1973, 476 F.2d 1204 [1973]. And this is especially true in Title VII cases where courts have refused to allow procedural technicalities to impede the full vindication of guaranteed rights. Sanchez v. Standard Brands, Inc., 5 Cir. 1970, 431 F.2d 455, 461.

■ The only pertinent discovery-type appellate decisions which we have found in the Title VII area are those in which an appellate tribunal has been called upon to consider the propriety of a District Court's order either granting or denying the enforcement of an EEOC Demand for Access to Evidence. See e. g. Georgia Power Co. v. EEOC, 5 Cir., 1969, 412 F.2d 462; Local No. 104, Sheet Metal Workers International Association v. EEOC, 9 Cir., 1971, 439 F.2d 237; Graniteville Co. v. EEOC, 4 Cir., 1971, 438 F.2d 32; Blue Bell Boots, Inc. v. EEOC, 6 Cir., 1969, 418 F.2d 355. All have uniformly upheld EEOC's right of access to the requested information. Any information relevant—in a discovery sense—to an EEOC investigation is likewise relevant to the private attorney-general, either in his individual role or in his capacity as the claimed representative of a class. H. Kessler and Co. v. EEOC, 5 Cir., 1973, 472 F.2d 1147 [1972] (En Banc).[9]

*Relevancy*

■ "In the problem of racial discrimination, statistics often tell much, and Courts listen." Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, 586, aff'd, 1962, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112. Our wide experience with cases involving racial discrimination in education, employment, and other segments of society have led us to rely heavily in Title VII cases on the empirical data which show an employer's overall pattern of conduct in determining whether he has discriminated against particular individuals or a class as a whole. See generally Griggs v. Duke Power Co., 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158; Rowe v. General Motors Corp., 5 Cir., 1972, 457 F.2d 348; United States v. Hayes International Corp., 5 Cir., 1969, 415 F.2d 1038; Bing v. Roadway Express, Inc., 5 Cir., 1971, 444 F.2d 687; United States v. Georgia Power Co., 5 Cir., 1973, 474 F.2d 906 [1973].

■ One of the first legal questions precipitated by the passage of the Civil Rights Act of 1964 in this regard was the extent to which pre-Act discriminatory conduct was to be taken into account in evaluating post-Act charges. There can no longer be any quarrel that pre-Act conduct is relevant to the extent that it sets in motion a chain of consequences which effects the status of the Black employee in the post-Act period, for "Congress did not intend to freeze an entire generation of Negro employees into discriminatory patterns that existed before the act." Quarles v. Philip Mor-

---

9. In *Kessler* we held that the provisions in 42 U.S.C.A. §§ 2000e–5(a), 2000e–8(e) prohibit the EEOC from "making public" the information obtained as a result of its investigatory efforts would not prevent EEOC from divulging such information to the charging party. In addition to the historic grounds which compelled this construction of these statutes, we also drew support from the public policy in favor of enabling the private attorney-general to effectively don the "mantle of the sovereign", Jenkins v. United Gas Corp., 5 Cir., 1968, 400 F.2d 28, 32, and

effectuate the policies at the Act or take up the banner of an aggrieved class:

This conclusion is further justified on policy grounds. It is difficult to understand how a grievant could amass the statistical information alone that would be necessary in order for him to know whether he had anything more than a suspicion of discrimination without access to the kind of information referred to in Section 709(e) concerning his employer's practices with regard to promotions, terminations and the like. 472 F.2d at 1151.

ris, Inc., E.D.Va., 1968, 279 F.Supp. 505, 516.

■ In United States v. Jacksonville Terminal Co., 5 Cir. 1971, 451 F.2d 418, we held that although evidence of pre-Act discrimination did not establish a *per se* violation in the post-Act era, the history did bear directly on the probability that similar conduct would continue.

"In a Title VII 'pattern or practice' cases, an employer's failure to hire or promote one Black may prove nothing. Once the single or isolated barrier is passed determination of the existence *vel non* of a racially discriminatory pattern or practice must depend on the quantum of proof presented in each case. No precise mathematical formulation is workable, nor did Congress intend to impose any racial constants. Certainly, however, an employer's failure to hire or promote all or the great majority of Blacks *while he concurrently hires or promotes Whites* may well indicate racial discrimination."

*Jacksonville Terminal, supra,* 451 F.2d at 441 (emphasis added). Cf. United States v. West Peachtree Tenth Corp., 5 Cir., 1971, 437 F.2d 221. We then proceeded to make an exhaustive analysis and comparison of the employment statistics regarding both Blacks and Whites. Only by this juxtaposition of factors could the Court effectively determine whether the employer had preferred one class of employees over another. "Discrimination on the basis of race or sex is *class discrimination*," Georgia Power Co. v. EEOC, 5 Cir., 1969, 412 F.2d 462, 468, although the manifestations may frequently be individualized. Flax v. Potts, 5 Cir., 1963, 313 F.2d 284, 289.

■ The importance of obtaining an overall statistical picture of an employer's practices with regard to both Black and White employees does not depend on the presence of an alleged "pattern or practice" or a valid charge of class discrimination or class action. We categorically rejected this notion in

Georgia Power v. EEOC, *supra.* There the EEOC sought historical, statistical information regarding both Black and White employees of Georgia Power. The company objected to EECO's Demand for Access to this evidence contending that because EEOC was only investigating the charge of an individual party that he was refused employment solely because of his race that the only relevant evidence was that relating to the filling of that particular vacancy. Disagreeing, we said:

"Certainly this information is relevant, but we cannot agree that it was the only relevant evidence. Discrimination on the basis of race or sex is *class discrimination*. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals."

Georgia Power Co. v. EEOC, *supra,* 412 F.2d at 468. Even though a suit seeks only individual relief for an individual instance of discrimination, and is not a "pattern or practice" suit by the government or a class action, the past history of *both* Black and White employees is surely relevant information. Id.; Marquez v. Omaha District Sales Office, 8 Cir., 1971, 440 F.2d 1157, 1160; Graniteville Co. v. EEOC, 4 Cir., 1971, 438 F.2d 32, 42; Blue Bell Boots, Inc. v. EEOC, 6 Cir., 1969, 418 F.2d 355, 358. It is therefore discoverable.

■ Without making any pretense of exhaustively cataloguing possible uses of this information to Burns we note that one of Thiokol's chief witnesses was the personnel manager of its Huntsville Plant, Charles G. Babcock. Mr. Babcock testified at length about the employment practices of Thiokol during his fourteen year association with the Company. He undertook to give certain data relating to the size of the Thiokol work force during various periods of time, and the general manner in which vacancies were filled. On cross-examination of Babcock, Burns' counsel was obviously unable to ask intelligent, informed questions relating to any specifics. Perhaps the information

sought by their interrogatories would have served to bolster Babcock's exculpatory testimony in behalf of the Company. Then again, it might have allowed plaintiff's counsel to pin the witness down to some unexplainable particulars. We do not know. The point is that open disclosure of all potentially relevant information is the keynote of the Federal Discovery Rules. In this case, that focal point has been ignored.

In *Jacksonville Terminal, supra,* we said that "deprived of an historical overview in these situations, Justice would surely be blind," 451 F.2d at 441. Were Justice to be deprived of an historical overview of the industrial context in which Claxton Burns was discharged, she could not—as she *must*—be color blind.

### The Burden

■ Thiokol argues that even if the information sought by Burns' interrogatories is somewhat relevant to his claim, that the onerous burden of compiling, assimilating, and synthesizing voluminous employment records into cogent, responsive answers to the interrogatories outweighs the utility of the information. We disagree.

Of course, the extensive listing of information required to fully answer the interrogatories is somewhat cumbersome. But, as the Ninth Circuit has pointed out, the fact that an interrogatory calls for a list does not make it improper:

"Local 104 contends there is something unique about an order to compile lists. Local 104 is mistaken."

Local No. 104, Sheet Metal Workers International Association v. EEOC, 9 Cir., 1971, 439 F.2d 237, 243. The law requires a company to provide a prospective union with a list of employees in the unit. Excelsior Underwear, Inc., 1966, 156 N.L.R.B. 1236; NLRB v. Wyman Gordon, 1969, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709. Similarly, it requires a company to furnish shareholder lists in a proxy context, Studebaker Corp. v. Gittlin, 2 Cir., 1966, 360 F.2d 692, 698. And the law can compel an employer who is a defendant in a Title VII suit to furnish lists of employees, Georgia Power Co. v. EEOC, 5 Cir., 1969, 412 F.2d 462; Local No. 104, *supra.*

Of course the particular details of the discovery process are committed to the sound discretion of the trial court. Knowing, by virtue of our mandate, that the information is relevant, and therefore, discoverable, the judge may wish to require full answers to the interrogatories. But that is not his only option.

Since his initial ruling in this case, a new rule, F.R.Civ.P. 33(c) has been promulgated. It gives Thiokol the option to "specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."[10]

The judge may also exercise the full extent of his discretionary powers under F.R.Civ.P. 26(c) with appropriate protective orders as to time, place, manner, etc., in which the interrogatories will be answered.

■ Finally, our determination of the relevancy of this information does not *irrevocably commit* the judge and the parties to the process of discovery by interrogatories under Rule 33. If the judge determines that this particular manner of disseminating the information is in fact unduly burdensome on Thiokol, he may direct that alternative

---

10. Thiokol correctly demonstrates that Subsection (c) was not in effect until July 1, 1970, long after the date upon which it was obligated to furnish the answer to Burns' interrogatories. This option will be available on remand if Thiokol should choose to elect it—subject, of course, to the judge's approval. But see Sutter, Current Procedural and Evidentiary Considerations Under Title VII of the Civil Rights Act of 1964: Ready for the Defense, 6 Ga.L.Rev. 505, 512–14 (1972).

means be employed. Our paramount concern is that the information be available to the plaintiff.

Reversed and remanded for a new trial.[11]

11. Since we hold that the information sought by plaintiff's interrogatories was discoverable, we have withheld ruling on the merits of Burns' appeal on issues (ii) and (iii). On remand, the trial court should allow the parties to proceed directly to properly complete the discovery process, and then reevaluate Burns' class action in light of the information available to him at that time, in accordance with Johnson v. Georgia Highway Express, 5 Cir., 1969, 417 F.2d 1122. See also Parham v. Southwestern Bell Telephone Co., 8 Cir., 1970, 433 F.2d 421. This would also include any guidance that might be furnished by the en banc court in Huff v. N. D. Cass Company of Alabama, 5 Cir., 1972, 468 F.2d 172, currently under submission to the full Court. Because of the importance of the determination of Burns' qualification to serve as the representative of the class, the court should resolve the issue "as soon as practicable". F.R.Civ.P. 23(c) (1).

Ordinarily we accord great latitude to the District Court in situations which call for a retrial as to the extent to which the record of the first trial may be used in the second with appropriate supplementation. Because most of the testimony bearing on Burns' individual claim was given without the benefit of necessary discovery, however, we believe that in this instance the entire claim must be tried in full again. In this regard, we note that Thiokol has consistently urged on appeal that a prior arbitration of Burns' discharge was dispositive of that issue. The extent to which reliance shall be placed upon that proceeding must be determined in the first place by the trial court in accordance with the principles enunciated by this Court in Rios v. Reynolds Metals Co., 5 Cir., 1972, 467 F.2d 54.