Warren DILLON and Jean Dillon, Individually and on behalf of others similarly situated, Plaintiffs-Appellants,

v.

BAY CITY CONSTRUCTION COMPANY, INC., et al., Defendants,

and

AFBIC Development Corp., Riley Smith, Inc., and Riley B. Smith, Defendants-Appellees.

No. 73–3942.

United States Court of Appeals, Fifth Circuit.

May 12, 1975.

J. U. Blacksher, Mobile, Ala., Jack Greenberg, Sylvia Drew, New York City, for plaintiffs-appellants.

Chase R. Laurendine, Mobile, Ala., for defendants-appellees.

Richard W. Vollmer, Jr., Mobile, Ala., for other interested parties.

Before BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a Fair Housing case brought both as a class action to enjoin a pattern of racial discrimination in the sale of houses in a Mobile, Alabama subdivision and to compel the defendants to sell a

802

specific house to the named plaintiffs. Two weeks after the suit was filed, the District Judge consolidated the case on the merits with the hearing on the preliminary injunction. At the hearing, he directed that Bay City Development Corporation, the owner of the house, convey it to the plaintiffs but then held that since no discrimination had been shown by the remaining defendants, they should be dismissed from the case. Since we find that the case as consolidated by the District Court did not give the parties sufficient opportunity for discovery in order to see if they could sustain their complaint, we reverse.

The events that produced this suit were short-lived. It was only 10 days from the time when Jean Dillon first made a contract of sale to purchase the house for $42,500 for her and her husband until the time that the realtor returned her earnest money check with the explanation that the owner had decided to sell it to his daughter. The house she wanted was located in the previously all-white subdivision of Mobile known as Lansdowne. The seemingly dilatory actions of the defendants that she encountered appeared to her to be designed to inhibit her purchase of the house. Consequently, she and her husband filed suit to protect their right to purchase that house and the right of other black persons not to be similarly excluded from the area.

Briefly, these were the specific events: Jean Dillon on May 14, 1973 went to the office of Riley Smith Incorporated, the real estate agent that marketed the Lansdowne homes for the AFBIC Development Corporation, the developer of the addition and title owner of the lot at issue. Mr. Guillot, the agent for Riley Smith Inc., drew up a contract of sale that was signed there in the office. Mrs. Dillon returned home and immediately contacted a savings and loan in order to process a loan application. They told her then that the seller's signature had been omitted from the contract. Mrs. Dillon then called Guillot who told her that the omission was his error and that he would

bring a corrected typewritten contract by the school where she taught the next day, Tuesday, May 15, 1973.

It was not, however, until Wednesday morning that Mrs. Dillon was able to reach Guillot. He attributed the missed appointment to a flat tire, denied he was giving her the "run around" and said that the contract was not yet typed. That afternoon when she came to the real estate office for the contract Guillot filled it out then in longhand. He represented to her then that his signature as authorized agent was sufficient to complete the sale of the house. However, at the request of Jean Dillon, the contract was written so as to be subject to her husband Warren Dillon's approval upon his return from Chicago. That day Mrs. Dillon had her savings and loan begin to process the note based on the executed contract of sale.

On Thursday, May 17, the vice-president of the savings and loan noticed that the exact address had been omitted from the contract of sale. He then called the office of the seller, noted on the contract as Bay City Construction Company, where he was referred to Riley Smith. When the loan officer reached him, Smith himself represented that *he* was the owner of the house but would not accept the contract of sale so long as it was subject to Warren Dillon's subsequent approval.

That same Thursday, Guillot found Mrs. Dillon looking over the new house that she thought at this point was soon to be hers and gave her a letter from Smith stating that her check was being returned to her because Mr. Greene, the owner of Bay City Construction Company, would not accept the contract "under the conditions specified therein." In the letter Smith offered to discuss the sale of the house again with the Dillons when Warren Dillon returned "should it be available."

Jean Dillon immediately informed Guillot that her husband had agreed to the sale by phone and asked him to draft then and there an unconditional contract—this time with the signature of

Mr. Greene in order to avoid any further problems. Guillot agreed and even commented further that the Birmingham branch of Riley Smith Inc. had been called to see "how the other black people in the neighborhood were getting along with the whites."

Despite the unconditional contract for the seller's asking price, the sale was not expedited. For days thereafter Mrs. Dillon herself called the Riley Smith office to check its progress. Each time Guillot told her that he had been unable to contact Greene. Finally on Monday the 21st of May Riley Smith personally called Mrs. Dillon and informed her that the house was being sold to Mr. Greene's daughter and that she should come by and get her check. She refused and her check was mailed to her.

The Dillons filed their complaint three days later on May 24, 1973. They asked for a temporary restraining order and a preliminary injunction to prevent the sale of the house.[1] They sought damages personally for the Dillons and injunctive or declaratory relief for the class of similar black citizens barred by the defendants from living in the area. When the counsel for the defendants advised the Dillons that no attempt would be made to sell the house until after the hearing on the preliminary injunction, no hearing was sought on the temporary restraining order.

On May 30, 1973 the parties were notified that the District Judge planned to hear both the final merits and the preliminary injunction six days later on June 5, 1973.[2] On the day of the hearing at a prehearing conference, counsel fot the Dillons objected to the consolidation stating that he was unprepared on the final merits. During the same conference, the counsel for Bay City explained that although AFBIC was the title holder of the house, Bay City and Brewton Greene held an option to pur-

chase it. Counsel for Bay City stated that his client was then prepared to convey the house to the Dillons.

At the hearing itself, the trial Judge, after noting the stipulation by the parties to the sale, stated that they would turn to the question of the preliminary injunction and the damage issues. Both sides then protested that they were unwilling to put on evidence of damages on such short notice, but the Judge stated that he was not concerned about the class issue. That issue he said, was a question that he had doubts about but it was the proper subject for a brief. At that point the Judge seemed to backtrack and call for evidence in support of the motion for a preliminary injunction. The counsel for defendants stated that they had testimony that would be offered on this issue. The counsel for the Dillons appears to have understood only that he was offering evidence at that point only on the issue of the motion for preliminary injunction. Under those circumstances the appellants put on two witnesses—Jean Dillon and her friend, Bernice Moseley, who both testified to the problems the Dillons had encountered in purchasing the house.

After this testimony, the Dillons rested their case, thinking, according to their counsel, that evidence had been put on solely for the motion for preliminary injunction. At that point in the proceedings, the District Judge apparently determined that it was unnecessary to call the defendants' witnesses because he began to announce his proposed findings from the bench. He stated that there was no evidence that a class had been precluded from purchasing homes in the subdivision but that any possible claims should be considered by the HUD administrative procedure under 42 U.S.C.A. § 3610. As to the other defendants—Riley Smith Inc., Riley Smith individually, and AFBIC—the District Judge found

1. The suit was brought under both the Fair Housing Act of 1968, 42 U.S.C.A. § 3601 et seq. and 42 U.S.C.A. §§ 1981, 1982.

2. Appellants received their notice the following day, May 31, 1973, giving them just five days

to put together their case on the merits. In addition, service was not completed on all defendants until the very morning of the hearing, June 5, 1973.

no evidence of discrimination and therefore dismissed the case as to them.[3]

Appellants challenge the decision of the District Judge on four grounds: (i) the advancement of a case on the merits under such expeditious circumstances was an abuse of discretion; (ii) the District Judge lacked the statutory power to dismiss the action against the remaining defendants at the end of the plaintiffs' case-in-chief; (iii) the findings of fact of the Court as to the absence of discrimination were clearly erroneous; (iv) even if the Dillons' individual action was properly dismissed, the class action should not have been. Since we hold that both the class and the individual actions were improperly accelerated, we do not reach the other points.

■ Under F.R.Civ.P. 65 the District Judge has broad discretion to advance the merits in order to consolidate them with the hearing on the motion for a preliminary injunction. The rule permits the Trial Judge to flexibly merge and hear the component parts of a case thereby avoiding repetition and unnecessary delay. Nevertheless, the Trial Judge must not force the parties by the consolidation to sacrifice their right to fully present the available evidence. 7 Moore's Federal Practice ¶ 65.04[4]; Nationwide Amusements v. Nattin, 5 Cir., 1971, 452 F.2d 651; Puerto Rican Farm Workers v. Eatmon, 5 Cir., 1970, 427 F.2d · 210. Although here, unlike *Eatmon*, the Judge did give prior notice of the consolidation, the cases are similar in that in both instances counsel was convinced that they were offering their witnesses solely on the issue of the preliminary injunction. This confusion resulted in an inadequate hearing because counsel for the Dillons failed to put on even the evidence then available on the merits.[4]

■ But we do not put our action on whether this was a justifiable but mistaken impression of counsel faced with quick decisions. Advancement at that time, inhibited altogether the extensive discovery and investigation necessitated by this kind of class action and to which plaintiffs had a right under F.R.Civ.P. 26. It is inherently difficult to prove a pattern of discrimination directed at such a diverse minority group as would-be home purchasers whose common ground would be the threshold of the real estate agent's office. This Court has heretofore recognized the right of an individual class action plaintiff in support of his own claim to discover empirical data in order to reconstruct an employer's overall past employment practices with regards to the class of which plaintiff was a member. Burns v. Thiokol Chemical Corporation, 5 Cir., 1973, 483 F.2d 300. It was highly prejudicial to the plaintiffs to compel them to pull together their entire case either as a class or individually on such short notice. Additionally, the plaintiffs were entitled to discovery which would bear on the always troublesome questions of whether this was or ought to be considered a class action, see F.R.Civ.P. 23 and the terms and conditions, if any, on which it could proceed.

We therefore vacate the judgment and remand for further consistent proceedings.

Vacated and remanded.

---

3. Subsequently, the Dillons and Bay City settled their remaining disputes and the District Court granted their joint motion to dismiss. This made final its prior dismissal of AFBIC and Riley Smith, Inc.

4. Counsel for the Dillons stated on oral argument that had he realized at the time that he was in fact putting on his entire case, he would at least have called the defendants.