**Robert F. LAUFMAN et al., Plaintiffs,**

v.

**OAKLEY BUILDING AND LOAN COMPANY et al., Defendants.**

No. C–1–74–153.

United States District Court,
S. D. Ohio, W. D.

Sept. 8, 1976.

Donald F. Colegrove, Cincinnati, Ohio, for plaintiffs; Jay Mulkeen, Washington, D. C., of counsel.

Louis A. Ginocchio, Cincinnati, Ohio, for defendants; Warren R. Lowe, Cincinnati, Ohio, of counsel.

## OPINION AND ORDER

DAVID S. PORTER, District Judge.

This is a civil rights action which was instituted on April 29, 1974, in. which the plaintiffs, a white married couple, are suing the Oakley Building and Loan Company and its officers, pursuant to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.,* Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and regulations issued by the Federal Home Loan Bank Board, 12 C.F.R. 528 and 531. We held that the complaint stated valid claims for relief under the above provisions, and denied defendants' motion for summary judgment on February 13, 1976. *Laufman v. Oakley Building and Loan Co.,* 408 F.Supp. 489 (S.D.Ohio 1976).

The plaintiffs have filed a motion pursuant to Rule 37(a), for an order compelling defendants to produce documents pursuant

to plaintiffs' request dated March 24, 1976, to answer plaintiffs' second amended set of interrogatories, propounded March 24, 1976, and to provide a computer print-out of residential loan data requested March 30, 1976 (docs. 53 and 57). The parties have been unable to resolve their differences as to the proposed discovery by negotiation or mutual agreement. Defendants have filed a memorandum in opposition to plaintiffs' motion (doc. 56).

This case deals with the practice of "redlining." The complaint alleges that the defendants refused to lend the Laufmans money to purchase a house in North Avondale, a racially integrated area of Cincinnati, Ohio, because of the racial composition of the neighborhood in which the house is located. Plaintiffs also allege that the defendants are engaged in the practice of refusing to lend money, or requiring stricter terms for such loans, for the purchase of houses in racially integrated neighborhoods. The defendants, in their answer to Question 38 of plaintiffs' first set of interrogatories, stated that the Laufmans' application was denied for the following reasons:

In the judgment of the Executive Committee of the Board of Directors, the purported loan application disclosed enough information to make the loan unattractive to Oakley, for the following reasons (chronological order of no significance):

Mr. Laufman was an attorney, in private practice, with income prospects somewhat uncertain;

The uncertain marital status of Mr. Laufman and Mrs. Wesselkamper;

The mortgage security would be difficult to appraise accurately because of its age and the size of the building;

Money available for mortgage loans was not plentiful and mortgage rates were changing rapidly.

The foregoing does not include the fact that the loan application itself was not a legal application.

Plaintiffs seek to prove that the above non-racial reasons for their rejection are a pretext. It is plaintiffs' position that the materials sought are relevant to show pretext; that is, that evidence of defendants' lending policies and practices may be helpful in a determination of whether defendants' refusal to lend to the plaintiffs conformed to a general pattern of conduct in violation of the civil rights statutes. *See, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–5, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For the sake of brevity, a list of plaintiffs' interrogatories and requests for production of documents is attached as Appendix A.

Defendants' objections to the interrogatories and requests for production of documents may be summarized as follows: (1) the information requested has either already been provided or is not within the scope of discoverable material under Rule 26(b); (2) since this is not a class action, discovery "for class action purposes" should not be allowed; (3) the hardship placed on the defendants, if discovery is permitted, would be disproportionate to the value afforded plaintiffs; (4) the defendants' are prohibited from disclosing the requested information under the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.,* and are subject to civil liabilities should they satisfy plaintiffs' requests and (5) plaintiffs' requests for production are defective in that the items sought are not described with reasonable particularity. We will rule on these objections *seriatim.*

The defendants contend that the information requested has either already been provided or is not within the scope of discoverable material under Rule 26(b). Defendants do not specify what information has already been provided, except to note that several officers of Oakley Building and Loan have been deposed, plaintiffs' individual loan file has been produced, and a letter has been written describing the type of data which is fed into the computers and electronic data processing equipment employed by Oakley. We note that plaintiffs' interrogatory addressed to the matter of computer data states that plaintiffs will be satisfied if the above letter is specifically incorporated by the defendants as their an-

swer. We do not think defendants will be unduly burdened by this request. Due to the defendants' failure to specify what they have already provided, we can see no merit in defendants' objection. The more serious ground for objection relates to the scope of discovery.

■ Rule 33(b) provides that interrogatories may relate to any matters which can be inquired into under Rule 26(b). Rule 34(a) states that a request for the production of documents may be made for any document which constitutes or contains matters within the scope of Rule 26(b). Rule 26(b), the general provision regarding the scope of discovery, states that the parties may obtain discovery regarding any non-privileged matter relevant to the subject matter of the pending action, and that the information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. The discovery provisions of the Federal Rules of Civil Procedure are to be liberally construed. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission*, 418 F.2d 355 (6th Cir. 1969). This is particularly true in complex civil rights cases. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973); *Dillon v. Bay City Construction Co.*, 512 F.2d 801 (5th Cir. 1975). Certainly the relevancy requirement has been liberally construed. *See, Felix A. Thillet, Inc. v. Kelley-Springfield Tire Co.*, 41 F.R.D. 55, 57–8 (D.P.R. 1966); *Cox v. E. I. DuPont de Nemours and Co.*, 38 F.R.D. 396, 398 (D.S.C.1965); Wright and Miller, *Federal Practice and Procedure* § 2008.

■ We agree with plaintiffs that most of the proposed discovery is clearly relevant to the subject matter of this action. The plaintiffs allege that racial considerations were influential in the denial of their loan application. The information sought relates to defendants' loan application and appraisal process. It is plaintiffs' position that the production of the defend-

ants' active loan files and rejected loan applications, along with the requested computer print-out, appraisal forms, and other related data, will aid in the determination of the actual criteria used by defendants in approving or rejecting loan applications. Information regarding other loan applications may tend to prove that loans were regularly approved despite the presence of the factors allegedly relied on by the defendants in their rejection of the Laufman application; that the stated grounds for the rejection are sham; and that plaintiffs' application was rejected pursuant to a policy or practice denying loans to finance the purchase of houses in integrated neighborhoods. *See, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975); *United States v. Pelzer Realty Co.*, 484 F.2d 438, 442–43 (5th Cir. 1973); *Smith v. Sol D. Adler Realty Co.*, 436 F.2d 344, 347, 350 (7th Cir. 1971); *Newbern v. Lake Lorelei, Inc.*, 308 F.Supp. 407 (S.D. Ohio 1968). For example, the plaintiffs contend that defendants' appraisal forms take into account the ethnic composition of the neighborhood involved (doc. 53 and Appendix V). Such appraisal forms are prohibited by the Federal Home Loan Bank Board (doc. 53 and Appendix U). We agree with plaintiffs that this evidence is relevant in that the defendants' use of racial factors in their appraisal techniques may establish a pattern of conduct, and aid in the determination of whether racial factors entered into the denial of the Laufmans' application. *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, supra* at 358. In addition, one of the purported reasons for denial of their application was the alleged difficulty of appraising the property which the Laufmans wanted to buy. We do not think that defendants' appraisal practices are out of bounds merely because an appraisal was not made of the Laufman property.

■ Defendants' second ground for objection is that plaintiffs' discovery is "for class action purposes." This objection is

without merit. While it is true that we refused to certify this case as a class action in our order of November 8, 1974 (doc. 13), we do not find that plaintiffs' requests exceed the scope of Rule 26(b). The cases cited by defendants in support of their position dealt with actions under the federal securities acts and the Truth-in-Lending Act. The type of evidence which is relevant in one action may not be relevant in another depending on the statute relied upon by the plaintiff. We note that some of the cases cited by defendants dealt with discovery abuse aimed at client solicitation. We do not think that it is appropriate for this Court to speculate on plaintiffs' motives for bringing the present action, on the ground that Mr. Laufman specializes in civil rights litigation and has at least one other similar case pending in another Court. In our earlier opinion at 408 F.Supp. 489 we held that the plaintiffs stated claims under the civil rights acts, alleged an injury cognizable under those acts, and had standing to challenge the defendants' alleged practice of "redlining." The question for this Court is whether the information sought is relevant to plaintiffs' claim. We should be wary of denying the plaintiffs full and adequate discovery based on defendants' undifferentiated fears and suspicions, lest we deny them their day in Court. *See, Burns v. Thiokol Chemical Corp.,* 483 F.2d 300 (5th Cir. 1973); *Dillon v. Bay City Construction Co.,* 512 F.2d 801 (5th Cir. 1975). The plaintiffs in this case are entitled to discover facts relating to defendants' policies and practices with respect to transactions similar to the one in question, whether the present case is a class action or not, as they may tend to show a pattern of refusal to lend in integrated areas. *See, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Dillon v. Bay City Construction Co.,* 512 F.2d 801 (5th Cir. 1975); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 344 (10th Cir. 1975); *Georgia Power v. EEOC,* 412 F.2d 462 (5th Cir. 1962); *Burns v. Thiokol Chemical Corp.,* 483 F.2d 300 (5th Cir. 1973).

■ However, we agree with defendants that the discovery directed at obtaining information concerning the Oakley mergers is getting far afield. If loans are not being made in integrated areas we are of the opinion that the discovery of loan files and rejected applications, together with a computer print-out, should satisfy plaintiffs' needs. For the time being, then, we sustain the objection to interrogatory Number 11 at page 5, document 53. We also sustain the objection to the production of records listed under B. (a) and (b) at page 6 of document 53. We should make it clear, however, that the basis of our ruling is relevancy, and not defendants' fears or suspicions regarding plaintiffs' motives for seeking the information.

■ As to the defendants' arguments that the discovery sought, if permitted, would be unduly burdensome, we hold that the defendants have not met their burden of making a specific showing of reasons why the interrogatories should not be answered, or why the documents in question should not be produced. Defendants have merely made conclusory objections, which assume that the information sought is irrelevant to the present action (doc. 56 at 7–8).

[C]ourts should not dispose of interrogatories on the basis of any broadside generalizations as to "burdensomeness" and "expense." All interrogatories are burdensome and expensive to some degree, and the question is just how much burden and expense is justified in the particular case. 4A *Moore's Federal Practice* ¶ 33.-20.

*See also, Burns v. Thiokol Chemical Corp., supra; Rich v. Martin Marietta Corp., supra.* Defendants have available the options provided by Rule 33(c), and may seek appropriate protective orders as to the time, place, and manner in which the interrogatories will be answered. Nor is this Court irrevocably committed to any particular manner of discovery, should it later appear that the means selected are unduly burdensome or might lead to abuse. To frustrate the search at this point based on the defendants' unsupported claims of hardship would be unjust. Defendants' objections are overruled.

■ The defendants also argue that the discovery of information relating to other loan applications is prohibited under the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* While that statute contains provisions imposing civil liability for the "willful" or "negligent" noncompliance with its requirements, Section 1681b(1) provides that information of the type sought may be furnished in "response to the order of a court having jurisdiction to issue such an order." If the defendants comply with an order of this Court, no civil liability will result from such compliance. *Kansas Com'n on Civil Rights v. Sears, Roebuck & Co.,* 216 Kan. 306, 532 P.2d 1263 (1975); *United States v. Bremicker,* 365 F.Supp. 701 (D.Minn.1973). This Court is, of course, vested with authority to issue such protective orders as it deems advisable in order to protect the privacy of the individuals involved, and a party anticipating a potential problem with 15 U.S.C. §§ 1601–81k should seek such protective orders. But it is clear that the Consumer Credit Protection Act cannot shield savings and loan institutions from suits under the civil rights statutes. Accordingly, defendants' objection is overruled.

■ Finally, the defendants contend that plaintiffs' requests for production of documents are defective in that the items sought are not described with reasonable particularity. This objection is overruled. Defendants contend that designations that are chiefly "any and all documents . . ." are insufficient designations under Rule 34(b), citing *Richland Wholesale Liquors, Inc. v. Joseph Seagram & Sons, Inc.,* 40 F.R.D. 480 (D.S.C.1966). Whatever merit there may be in such a rule of thumb, we do not think that it has much bearing on the dispute at hand. In any event, the *Richland* court held that a motion requesting discovery of all the "financial statements and records of" a corporation for a ten year period was overbroad. Nor do we agree that *Gaison v. Scott,* 59 F.R.D. 347, 353 (D.C.Hawaii, 1973) is the last word. *See, Coalition of Black Leadership v. Doorley,* 349 F.Supp. 127, 129 (D.Rhode Island 1972). There is no litmus paper test for judging the sufficiency of a designation. As Professor Moore notes:

> In 1970, Rule 34(b) and Official Form 24 were amended to give specific sanction to description by category. Designation by category is sufficient, then, and the categories themselves need be defined only with reasonable particularity. The question is whether a reasonable man would know what documents or things are called for. 4A *Moore's Federal Practice* ¶ 34.07.

■ The plaintiffs' "Appendix A" requests documents relating to five categories of information, together with the minutes of board and committee meetings, rejected loan applications, and active loan files. The plaintiffs then define documents to include a long list of types or methods of transcription. Obviously the plaintiffs added the definition of documents to avoid a subsequent claim that a "Mag Card" is not a document, or a chart is not a document. Such objections are sometimes made. *See, Coalition of Black Leadership v. Doorley,* 349 F.Supp. 127, 129 (D.Rhode Island 1972). Defendants' chief objection seems to be that this definition of documents renders the request for production hopelessly inadequate under Rule 34(b). However, we agree with plaintiffs that a broad definition of the term "documents" is permissible to insure that all discoverable material is provided. We hold that the designated categories of information listed at Appendix A of document 56 are sufficient under Rule 34(b).

Counsel are hereby ordered to submit within 10 days their proposals for such protective orders as they deem appropriate under 15 U.S.C. § 1601 *et seq.,* together with any other requests for protective orders, so that discovery may proceed. The parties may request a hearing on the issue of expenses and fees under Rule 37(a)(4).

### APPENDIX A

A. *Defendants' Objections to Interrogatories*

The defendants have objected to answering any of the interrogatories propounded

to them. The full text of the interrogatories is as follows:

1. List and describe every type of data which is fed into computers or electronic data processing equipment employed by defendant Oakley. If you are willing to incorporate as your answer the letter dated January 24, 1975, from Counsel for the Defendants, Louis A. Ginocchio to Daniel A. Searing regarding what data is fed into Oakley's computer, this will be sufficient.

2. List any special studies or analyses performed by or for defendant Oakley in the last two years that have employed either defendants' electronic data processing equipment or data derived therefrom. Describe each such study or analysis, if any, and list each type of data or information contained therein.

3. Describe in detail the policy of defendant Oakley as to the storage and retention of documents and other data pertaining to loans and loan applications.

4. List and describe the documents contained in each loan file: (a) before approval or rejection by the executive committee; (b) subsequent to the executive committee's decision.

5. State the number of active loan files now in the possession or control of defendant Oakley and state the precise location(s) where they are stored or filed.

6. State the number of inactive loan files now in the possession or control of defendant Oakley and state the precise location(s) where they are stored or filed. State the length of time for which inactive loan files are retained.

7. State the number of rejected loan applications now in the possession or control of defendant Oakley and state the precise location(s) where they are stored or filed. State the length of time for which inactive loan files are retained.

8. State the number of appraisal forms now in the possession or control of defendant Oakley made or obtained in connection with loan applications. State the number and precise location(s) of such appraisal forms connected with: (a) active loans; (b) inactive loans; (c) rejected loan applications.

9. If there have been any changes since January 1, 1970, in the policies or practices of defendant Oakley as to the storage, filing, or retention of records, reports, documents, appraisals or other material connected with loans and loan applications, describe such changes in detail;

10. State the precise storage location(s) of all minutes of the board of directors and executive committee of defendant Oakley.

11. Identify and describe all applications and supporting material filed with state or federal authorities in connection with office relocation of defendant Oakley and in connection with the mergers between defendant Oakley and: City Building and Loan; June Savings and Loan; and Northwestern Building and Loan. State the precise location(s) where all such materials are stored or filed.

12. In defendant Oakley's answer to plaintiffs' first set of interrogatories, answer number 23 described eight loan applications received within the past year from the neighborhoods or sub-neighborhoods of North Avondale, Avondale, Southside of Clifton, Uptown area of Cincinnati, Evanston, Mount Healthy, Walnut Hills, East End and River Road. For each of the above loan applications, please indicate: (1) the address of the subject property; (2) whether the property is single family or commercial; (3) whether the loan application was accepted or denied; and (4) the loan file number.

13. Please state the number of loan applications that have been received in the neighborhoods or sub-neighborhoods of North Avondale, South Side of Clifton, Uptown area of Cincinnati, Evanston, Mount Healthy, Walnut Hills, East End, and River Road during the period January 1, 1970 to January 1, 1974 (excluding those answered in the preceding interrogatory). For each of the above loan applications, please indicate: (1) the address of the subject property; (2) whether the property is single family or commercial; (3) whether the loan ap-

plication was accepted or denied; and (4) the loan file number.

**B.** *Defendants' Objections to Request for Production of Documents*

The defendants have objected to producing the information contained in plaintiffs' request for production of documents. Plaintiffs have requested to inspect and copy certain business records of the defendants, specifically those records which contain any of the following information:

(a) all proposed and actual transfers or movements of Oakley's office locations or of those institutions that have merged with Oakley;

(b) all proposed and actual mergers of other savings institutions with or by Oakley;

(c) the availability of funds for residential housing loans from January 1, 1974 to January 1975;

(d) policies or practices of lending to minorities or in areas in which minorities reside or are expected to reside;

(e) all appraisal forms used by an appraiser employed by Oakley since 1950.

1. Minutes of meetings of all boards and committees, including but not limited to the Board of Directors, the Executive Committee and any other committee with responsibilities pertaining to residential loans since January 1, 1968.

2. All rejected loan applications since January 1, 1968, including their appraisal reports.

3. All active loan files as of November 1, 1974.

4. All appraisal books, manuals, textbooks, and studies in the possession, custody or control of the defendants.

**C.** *Request For Computer Print-Out of Residential Loan Data*

The defendants have objected to providing, at plaintiffs expense, the following information contained in Oakley's computer:

1. name and address of the borrower;

2. address of the mortgage security, by county, town, zip code, and distance from Oakley office;

3. the date of appraisal;

4. the appraised value;

5. the date of loan approval;

6. the original amount of the loan;

7. the selling price of the property;

8. the term of the loan;

9. the interest rate;

10. whether this represents a first or second trust; and

11. delinquencies and foreclosures.