Austin DUNN et al., Plaintiffs,

v.

MIDWESTERN INDEMNITY et al., Defendants.

No. C–3–78–105.

United States District Court, S. D. Ohio, W. D.

Sept. 26, 1980.

---

Ashley Brown, Stuart Goldberg, Dalma Grandjean, Noel Vaughn, Dayton, Ohio, for plaintiffs.

Neil Freund, Robert Alexander, Dayton, Ohio, for defendant, Midwestern Indemnity Company.

Herbert Snyder, and Barbara Webber, Indianapolis, Ind., Thomas Jenks, Dayton, Ohio, for defendant, American States Insurance Company.

Gregory Dunsky, Dayton, Ohio, for Hartford Insurance Company.

Dwayne Quaini, Chicago, Ill., Robert King, Cincinnati, Ohio, for Commercial Union Assurance Company.

PARTIAL DECISION CONCERNING DEFENDANTS' OBJECTIONS AND MOTIONS FOR PROTECTIVE ORDER TO PLAINTIFFS' DISCOVERY REQUESTS RELATING TO DEFENDANTS' COMPUTER SYSTEMS, PROGRAMS AND TAPES; REQUESTS HELD RELEVANT UNDER CIVIL RULES AS EITHER RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE; EVIDENTIARY HEARING SET TO DETERMINE IMPOSSIBILITY AS OPPOSED TO IMPRACTICABILITY OF COMPLIANCE; OTHER MATTERS TO BE DETERMINED AT EVIDENTIARY HEARING SET FORTH

RICE, District Judge.

The captioned cause is a civil rights action instituted by a black husband and wife against five insurance companies, and an employee or agent of one of said companies, pursuant to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., 42 U.S.C. §§ 1981–1982. The case deals with a practice sometimes known as "redlining." Plaintiffs allege that they were denied homeowners insurance on their residence in November and December, 1977, because they are black and because their residence is located in a predominantly black neighborhood. Stated differently, they allege

that they were denied coverage because of the defendants' racially discriminatory actions and/or standards.

Pursuant to the Court's instructions at a Pretrial Conference held on July 1, 1980, defendants, Midwestern Indemnity Company (Midwestern), American States Insurance Companies (American States), Commercial Union Assurance Companies (Commercial Union), and The Hartford Insurance Company (Hartford), have submitted memoranda summarizing their objections to the plaintiffs' discovery requests relating to these defendants' computer systems and computer tapes which contain records concerning residential policyholders in the Dayton, Ohio area. Commercial Union also filed a motion for protective order and the Court assumes that the above named defendants join in this motion to the extent of their specific objections to Plaintiffs' Amended Second Interrogatories and Amended Third Request to Produce Documents. Plaintiffs filed a Memorandum Contra Defendants' Memoranda, and the matter came on for an oral hearing on August 11, 1980.

The discovery requests to which the defendants object seek minute information about the defendants' computer capabilities, including information about their computer equipment, raw data, programs and data managements systems, in addition to the production of tapes which contain information about past and present policyholders in the Dayton, Ohio area. In some cases, the information is sought for a specified time period; in others, no time limits are indicated. As Commercial Union has characterized the requests, plaintiffs seek a "roadmap" to each of the defendants' computer systems (doc. # 65, at 14).

Plaintiffs seek to prove that the underwriting standards formulated and applied by the defendants are racially discriminatory, and that because of defendants' standards and action, plaintiffs were denied homeowner insurance coverage during November and December, 1977. It is plaintiffs' position that the requests are relevant to show that the defendants' practices and standards are racially discriminatory, that is, that the information about their computer capabilities may be helpful to determine whether defendants' practices and standards, which allegedly prevented them from procuring insurance, violate the statutory provisions referred to above.

Plaintiffs offer four purposes for the discovery requests at issue:

1. to determine what computer based data possessed by defendants support each of defendants' standards;

2. to determine what computer based models and analyses the defendants did construct and were capable of constructing from raw data;

3. to determine what computer based capacity each defendant possessed that would:

   (a) justify or determine the validity of their standards;

   (b) assess the impact of those standards of minority and integrated neighborhoods and evaluate the feasibility of less discriminatory alternatives;

   (c) determine whether redlining is local or national in scope, that is, to what extent redlining pervades the industry; and

   (d) the extent to which the data lends itself to model formulation and configurations which are less racially discriminatory; and

4. to determine the existence and merits of defendants' potential business judgment defense.

(Plaintiffs' Memorandum Contra Defendants Memoranda, at 17–18).

Midwestern's objections apparently go only to the plaintiffs' request for the production of the computer tapes and other documents sought in Plaintiffs' Amended Third Request to Produce Documents. It appears that Midwestern has attempted to respond to the document request at least insofar as it seeks information. It also appears that Midwestern has not submitted objection to Plaintiffs' Amended Second Interrogatories.

The objections that have been raised by the defendants differ to some extent as do their arguments in support of their objections. They are, however, unanimous in their contention that these discovery requests are beyond the scope of discovery under Rule 26(b), Fed.R.Civ.Pro., that is, that the requests are irrelevant to the subject matter of this lawsuit. The other objections may be summarized as follows: 1. all relevant information has been or will be provided; 2. since this action involves only two plaintiffs (a married couple), class action–type discovery should not be allowed; 3. compliance, even if feasible, would be a herculean task that is unduly burdensome and expensive, and entirely disproportionate to the dubious value afforded plaintiffs; 4. the requests are vague and overbroad; 5. in some instances, the requests are unintelligible because plaintiffs have failed to define their terms; and 6. the information sought constitutes trade secrets and proprietary information, the disclosure of which would place defendants at a competitive disadvantage.

The issue of whether the requests are within the scope of discovery under Rule 26(b), Fed.R.Civ.Pro., is a threshold matter. The following discussion will set forth the Court's reasons for concluding that plaintiffs' discovery requests are relevant under Rule 26(b). Thereafter, the Court will address certain other arguments raised by the defendants and will apprise the parties of the manner in which the Court intends to proceed toward final determination of these matters.

The defendants contend that all relevant information pertaining to this action either has been or will be provided to the plaintiffs. In their memoranda, each defendant summarizes the discovery that has been had thus far, which appears to be extensive. Defendants further contend that the information sought in the present interrogatories and document requests has either been provided in another form, or that such information is not discoverable under Rule 26(b).

■ At the outset, the Court notes that it is persuaded by the argument presented in plaintiffs' memorandum, that computer information and machine records are not *per se* irrelevant. *See* Plaintiffs' Memorandum Contra Defendants' Memoranda in Support of Motion for Protective Order, at 8–9. *See also* The Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487; *Manual for Complex Litigation*, 2 Moore's Federal Practice. Although this case has not been designated as "complex litigation," the Fifth Recommendation in the *Manual for Complex Litigation*, clearly indicates that the type of discovery being sought in this case has been contemplated:

> *Fifth Recommendation*: Discovery requests relating to the computer, its programs, inputs and outputs should be processed under methods consistent with the approach taken to discovery of other types of information. *Id.*, § 2.715, at 129.

> . . . . .

> In many instances it will be essential for the discovering party to know the underlying theory and the procedures employed in preparing and storing machine–readable records. When this is true, litigants should be allowed to discover any materials relating to the record holder's computer hardware, the programming techniques employed in connection with the relevant data, the principles governing the structure of the stored data, and the operation of the data processing system. When statistical analyses have been developed from more traditional records with the assistance of computer techniques, the underlying data used to compose the statistical computer input, the methods used to select, categorize, and evaluate the data for analysis, and all of the computer outputs normally are proper subjects for discovery. *Id.* at 131–132.

■ Concluding that the plaintiffs' requests are not *per se* irrelevant, the issue before the Court is whether plaintiffs' interrogatories and document requests are relevant to the subject matter of this lawsuit. Rule 26(b) states that parties may

obtain discovery regarding any non–privileged matter relevant to the subject matter of the pending action, and that the information need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. The general discovery provisions of the Federal Rules of Civil Procedure are to be liberally construed. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Schlagehauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission*, 418 F.2d 355 (6th Cir. 1969). This is especially true in complex civil rights cases. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973); *Laufman v. Oakley Building & Loan Co.*, 72 F.R.D. 116 (S.D.Ohio 1976). The specific relevancy requirement of Rule 26(b) is likewise given liberal construction. *See Laufman v. Oakley, supra; Felix A. Thillet, Inc. v. Kelley–Springfield Tire Co.*, 41 F.R.D. 55, 57–58 (D.P.R.1966); *Cox v. E. I. DuPont de Nemours and Co.*, 38 F.R.D. 396, 398 (D.S.C. 1965). *See also*, Wright & Miller, Federal Practice and Procedure § 2008.

The Court acknowledges that discovery requests similar to those in the case at bar have been denied by other courts. *See, E. E. O. C. v. Carter Carburetor*, 577 F.2d 43 (8th Cir. 1978), *cert. denied*, 439 U.S. 1081, 99 S.Ct. 865, 59 L.Ed.2d 52 (1979); *Reese v. Batesville Casket Co.*, Civil Action No. 79–1645 (D.D.C., June 22, 1979). However, since neither of those courts set forth its reasoning with respect to plaintiffs' computer requests, those authorities are in no way dispositive. This Court must look to the context of this action to determine whether plaintiffs have demonstrated the relevancy of their requests.

■ Stated in admittedly simplistic terms, plaintiffs are essentially alleging that the racial discrimination which caused them to be unable to procure insurance coverage on their residence in November and December, 1977, may, in some way, be built into the defendants' computer systems. As the Court understands their reasons for the requests at issue, they are seeking to discover either: (1) something in defendants' computer systems that should not be there, but is; or (2) something that is not in their systems, which should be. Although the Court expresses no opinion whatsoever on the merits of plaintiffs' allegations, it can envision several ways in which the alleged flaw may occur. For example, because of a man–made decision, the defendants may have developed or used programs in assessing raw data which contribute to the formulation or application of racially discriminatory standards, or, there may be a field in one or more of the defendants' computer programs or tapes which has influenced a man–made decision, the effect of which is to create a racially discriminatory standard or practice. Other possibilities could probably be suggested.

To the extent that defendants' computer capabilities may foster, contribute to, or reflect the formulation or application of the defendants' underwriting standards, which are the subject matter of this action, the plaintiffs' discovery requests are relevant under Rule 26(b), either because the information sought would be admissible at trial or because said information appears reasonably calculated to lead to the discovery of admissible evidence. Because the production of or access to conventional files and computer print–outs does not provide the information herein sought in another form, the discovery which has thus far been completed is no substitute for the present requests.

Additionally, the Court agrees that the present discovery requests are relevant under Rule 26(b), in order for plaintiffs to adequately prepare to meet a business judgment or necessity defense. Counsel for Midwestern conceded at the oral hearing that Midwestern intends to assert this defense. In response to the Court's direct inquiry about whether Commercial Union intended to waive the defense, counsel for Commercial Union reserved the right to assert the business judgment defense. In the Court's view, this defense is inherent in defendants' case, and counsel would be remiss in not asserting it. Consequently, un-

less assertion of said defense will in no way be supported by defendants' computer capabilities, the Court is wary of denying plaintiffs' full and adequate discovery of the defendants' computer systems, including access to and information about defendants' computer equipment, raw data, programs, data management systems, and the by-products of their analyses. To deny them this discovery may, in effect, be to deny them their day in Court.

█ Defendants, in their memoranda and at oral hearing, made much of the fact that this action involves only two plaintiffs who seek redress for a single instance of alleged racial discrimination in the procurement of homeowners insurance. They stress that the plaintiffs seek to discover information that is not confined to the time, locale or individuals herein involved. Basically, they contend that since this is not a pattern of practice case, class action–type discovery should not be allowed in this suit brought by private litigants for a single occurrence. Having reviewed the arguments and authorities of the parties, the Court finds no merit to this objection.

A similar contention was rejected by the Court in *Laufman v. Oakley Building & Loan Co.*, 72 F.R.D. 116 (S.D.Ohio 1976) (Porter, J.), in which a married couple instituted an action under, *inter alia*, 42 U.S.C. §§ 3601, *et seq.*, as the plaintiffs have done in the case at bar. *Laufman* also dealt with "redlining." The plaintiffs alleged "that the defendants refused to lend [them] money to purchase a house in ... a racially integrated area of Cincinnati, Ohio, because of the racial composition of the neighborhood in which the house is located." *Id.* at 119. Claiming that racial considerations were influential in the denial of their loan application, plaintiffs sought discovery relating to "defendants' loan application and appraisal process." *Id.* at 120. Addressing the contention that class action–type discovery should not be allowed, the Court stated:

> The plaintiffs in this case are entitled to discover facts relating to defendants' policies and practices with respect to trans-

actions similar to the one in question, whether the present case is a class action or not, as they may tend to show a pattern of refusal to lend in integrated areas. *See, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Dillon v. Bay City Construction Co.*, 512 F.2d 801 (5th Cir. 1975); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 344 (10th Cir. 1975); *Georgia Power v. EEOC*, 412 F.2d 462 (5th Cir. 1962); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973).

*Id.* at 121.

In *Burns v. Thiokol, supra* at 305, the Court states that "[a]ny information relevant–in a discovery sense–to an EEOC investigation is likewise relevant to the private attorney general, either *in his individual role* or in his capacity as the claimed representative of a class." (emphasis added) The import of this analogy is illustrated in *Georgia Power v. EEOC, supra*, where the company contended:

> "[T]hat the only relevant data were 'the records and information pertaining to Mrs. Adkins, together with such records and information pertaining to the individual who was hired in preference to Mrs. Adkins.' "

*Id.* at 468. The Court responded to this contention:

> Certainly this information is relevant, but we cannot agree that it was the only relevant evidence. Discrimination on the basis of race or sex is *class discrimination*. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals ... To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices. Thus we think it clear that information concerning other positions is relevant to the investigation. (Court's emphasis)

*Id.*

The foregoing authorities lead the Court to conclude that plaintiffs are entitled to the broad discovery sought, not only to information concerning their particular claim,

but also to information that may lead them to evidence of a pattern of conduct. Acting as private attorneys general under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601, *et seq.*, they are entitled to information "with respect to transactions similar to the one in question, as they may tend to show a pattern" of refusal to accept insurance applications of black applicants and/or applicants who own homes in predominantly black neighborhoods.

■ Having determined that the plaintiffs' discovery requests are relevant to the subject matter of this litigation, the Court now turns to defendants' other objections. One of the objections, pressed most fervently by Hartford, is that some of the requests are unintelligible because the plaintiffs have failed to define their terms. In its memorandum, Hartford lists over 30 terms which they claim have no clear and certain meanings. *See, Affidavit of William H. Baldwin, Jr.* (doc. # 73). To the extent that plaintiffs have failed to define any terms necessary for defendants to respond to the discovery requests, they are ordered to provide said definitions, WITHIN TEN DAYS FROM DATE OF RECEIPT OF NOTICE OF THIS DECISION.

■ Defendants, Commercial Union, American States and Hartford also object to the plaintiffs' discovery requests on the grounds that compliance, even if feasible, would be a herculean tasks that is unduly burdensome and expensive. Their objections with respect to the time frame of the requests, overbreadth and vagueness seem to be closely intertwined with this objection. Because these objections are, to a certain extent, inter–related, they will be considered together.

Rule 26(c) states that a protective order is available "to protect a party or person from annoyance, embarrassment, oppression, or *undue burden or expense* . . . " The Court has before it a wide divergence of opinion as to the costs, manpower, and feasibility of complying with plaintiffs' discovery requests. Midwestern, as noted earlier, has apparently completed partial compliance with the plaintiffs' requests and is before

the Court only on its objection to the production of computer tapes. Commercial Union has submitted the affidavit of one of its employees, which estimates that compliance would take an estimated 10,000 man–hours at a cost of $375,000 to $500,000. (Affidavit of Richard Berk, Exhibit J–1, at 4). Hartford, in its memoranda, states that the costs "in terms of personnel and computer time and other costs . . . would be immense," but does not venture an estimate. (doc. # 73, at 6). It does, however, estimate that "it would take one full person/year for [it] to do the research and investigation necessary to respond . . ." *Id.* American States has not, to the Court's knowledge, ventured any estimates concerning costs and human resources necessary for compliance.

These conflicting contentions with respect to the cost, burden, and feasibility of compliance lead the Court to believe that a final decision on these matters at this time would be premature, if not impossible. Instead, the Court will conduct an evidentiary hearing, after giving counsel for defendants sufficient time to consult their clients and to gather evidence and expert support for their contentions. The primary focus of the hearing will be to determine whether compliance with said requests is merely time–consuming and laborious, or whether it is impossible. The Court wishes to stress that impracticability is not to be equated with impossibility in this context. Other issues to be addressed at the proposed hearing concern what, if any, time constraints should be imposed on plaintiffs' requests which contain no time limits, and whether there is merit to plaintiffs' claim that they need certain information, dating back to January 1, 1970, in order to adequately evaluate trends and experience.

In *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D.Mass.1976), the plaintiffs sought discovery concerning accidents similar to the one alleged. Sears resisted compliance on the ground that there was "no practical way for anyone to determine whether there have been any complaints similar to those alleged . . . 'other than [by]

going through all of the claims . . . which is the equivalent of an impossible task.' " *Id.* at 76. The Court stated, "[m]erely because compliance with a 'Request for Production' would be costly or time–consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence." *Id.* The Court further stated:

> The defendant may not excuse itself from compliance with Rule 34, Fed.R.Civ.P., by utilizing a system of record–keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery, by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules. [citations omitted]
>
> . . . . .
>
> It is well established that a private corporation cannot avoid producing documents by an allegation of 'impossibility' if it can obtain the requested information from sources under its control. [citations omitted.]

*Id.* at 76; *Accord, Alliance to End Repression v. Rochford,* 75 F.R.D. 441 (N.D.Ill. 1977).

The Court recognizes that the problems presented in complying with plaintiffs requests in this case may be more complex or of a different nature than those presented in the above cases. However, the Court agrees with the reasoning in *Kozlowski, supra.* Therefore, it wishes to make clear that it will not be receptive to defendants' impossibility contentions insofar as they are grounded in the peculiar manner in which defendants maintain their computer systems.

The final objection which the Court has not yet addressed concerns defendants' contentions that the information sought constitutes trade secrets and proprietary information, the disclosure of which will cause the defendants competitive disadvantage. The Court has no way of knowing the extent to which compliance with the plaintiffs' discovery requests will require them to divulge trade secrets and proprietary information. However, to the extent that trade secrets and confidential information is requested, the plaintiffs will be required to scrupulously comply with the Stipulation and Protective Order that has been in effect since July 14, 1978. *See,* doc. # 19. No deviation from this Order will be condoned by this Court.

Counsel listed below will take note that an oral hearing will be had beginning at 1 p. m. on Wednesday, October 22, 1980, at the United States District Court, 9th Floor, 200 West Second Street, Dayton, Ohio, the express purpose for which will be, as previously stated, the taking of testimony, if deemed necessary by counsel, to determine whether compliance with the Plaintiffs' Amended Set of Interrogatories and Amended Third Request to Produce Documents is merely time–consuming and laborious (impracticable) or it is impossible. Other issues to be addressed at this hearing will be what, if any, time constraints should be imposed upon plaintiffs' requests which contain no time limits, whether there is merit to plaintiffs' claim that they need certain information, dating back to January 1, 1970, whether the plaintiffs have sufficiently defined each and every one of the terms contained in the discovery requests in order to enable the defendants to clearly respond to same (the requirement that plaintiffs define their terms within ten days from date of receipt of notice of this decision will enable the defendants to review the plaintiffs' submission in order to determine whether they clearly state the substance of the information, documents and answers required), and whether the plaintiffs require additional protection, above and beyond the Stipulation and Protective Order, in effect since July 14, 1978, in the providing of discovery of matters that they claim to comprise trade secrets and proprietary information.