Bud E. BILLS, S. Kay Bradford, Tex K. Bradford, Robert B. Burkinshaw, Henry N. Gerritsen, Jimmie L. Hales, John B. Jones, George B. Leyba, Emory E. Logan, Joseph Mascaro, Jr., Clark G. Mathews, Garn T. Milar, George D. Pavich, Darell N. Petersen and Martin Pezel, Plaintiffs,

v.

**KENNECOTT CORPORATION, Defendant.**

Civ. No. C83–1314G.

United States District Court, D. Utah, C.D.

Oct. 3, 1985.

---

Rick J. Sutherland, Salt Lake City, Utah, for plaintiffs.

James M. Elegante, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION DENYING DEFENDANT'S MOTION FOR CERTAIN DISCOVERY COSTS

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on August 27, 1985, on defendant Kennecott Corporation's Motion for Payment of Certain Discovery Costs. James M. Elegante appeared on behalf of defendant Kennecott Corporation and Rick J. Sutherland appeared on behalf of the plaintiffs. Counsel for Kennecott Corporation filed a memorandum of law with the Court and all parties presented oral argument, after which the Court took the matter under advisement. The Court denies the defendant's Motion and hereinafter sets forth its reasoning.

### FACTUAL BACKGROUND

Plaintiffs in this action were salaried employees of defendant Kennecott Corporation and were terminated in 1982 as part of a reduction in Kennecott's work force. Plaintiffs allege that Kennecott terminated them because of their age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

During the course of discovery, plaintiffs sought production of documents containing detailed particular information regarding numerous employees at Kennecott's Utah operations. The defendant did not move for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure and did not contest the relevancy of the information sought. In order to provide plaintiffs with the data in usable form, defendant offered to supply the plaintiffs with either a computer tape or a printout of the computer data at the plaintiffs' choice, but only on the condition that plaintiffs pay the cost to generate the information. Counsel for plaintiffs advised Kennecott that they preferred the printout of the computer data, but that they would not pay the costs unless the Court ordered them to do so. Kennecott produced the data and then moved this Court for an order requiring plaintiffs to pay the cost incurred in producing the computer printout, which, by affidavit, amounts to $5411.25. We consider this matter equivalent to the determination which should be made if a Motion for Protective Order on the sole ground of cost and expense had been made.

Defendant asks this Court to exercise its discretion under Rule 26(c) of the Federal Rules of Civil Procedure to protect the defendant from undue expense, claiming that the cost of producing the requested information is a "special attendant cost" for which the defendant is entitled to reimbursement. Defendant also argues that plaintiffs are not being asked to spend any more than they would have spent had such information been kept only manually under older and less accurate systems of record keeping. Formerly, such data was kept by a manual record keeping system, and the Court infers that under such a system the defendant would have provided the plaintiffs access to the records pursuant to Rules 33(c) and/or 34(a) of the Federal Rules of Civil Procedure for their own inspection which would have been less accurate and may have cost the plaintiffs considerable time and expense to obtain the same information. Defendant asks the Court not to consider the relevance of the information sought or the relative abilities of the parties to withstand the expense in exercising its discretion, but the Court considers these matters to be among the factors which properly bear upon exercise of discretion, as is set forth hereinafter.

## COMPUTER–STORED INFORMATION

In recent years, the question of the discovery of computer-stored information has received significant judicial attention. In the last fifteen years, computerized record keeping has rapidly replaced the less accurate manual systems, and it is no wonder that computer-stored information has become involved in every type of litigation. In 1970, Rule 34 of the Federal Rules of Civil Procedure was amended to make it clear that discovery of the magnetic and electronic impulses involved in computer-stored information was appropriate. The Rule states:

(a) Scope. Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the custody or control of the party upon whom the request is served....

Referring to the 1970 amendment, the Advisory Committee expressed its purpose and scope:

The inclusive description of "documents" is revised to accord with changing technology. It makes clear that Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter by made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. *In many instances, this means that respondent will have to supply a printout of computer data.* (Emphasis added)

It is now axiomatic that electronically stored information is discoverable under Rule 34 of the Federal Rules of Civil Procedure if it otherwise meets the relevancy standard prescribed by the rules, although there may be issues in particular cases as to the form of what must be produced. *See e.g., Fauteck v. Montgomery Ward & Co.,* 91 F.R.D. 393 (N.D.Ill.1980). Indeed, some courts have required the responding parties to develop programs to extract the requested information and to assist the requesting party in reading and interpreting information stored on computer tape. *See, e.g., National Union Electric Corp. v. Matsushita Electric Industrial Co.,* 494 F.Supp. 1257 (E.D.Pa.1980). Depending on the type of case, a Court might even permit discovery of computer capabilities and capacities. See *Dunn v. Midwestern Indemnity,* 88 F.R.D. 191 (S.D.Ohio 1980). The Federal Judicial Center has recognized the challenge presented to discovery processes in the computer age:

In many instances it will be essential for the discovering party to know the underlying theory and the procedures employed in preparing and storing the machine-readable records. When this is true, litigants should be allowed to discover any material relating to the record holder's computer hardware, the programming techniques employed in connection with the relevant data, the principles governing the structure of the stored data, and the operation of the data processing system. When statistical analyses have been developed from more traditional records with the assistance of computer techniques, the underlying data used to compose the statistical computer input, the methods used to select, categorize, and evaluate the data for analysis, and all of the computer outputs normally are proper subjects for discovery.

*Manual for Complex Litigation* ¶ 2.715, at 75 (1977). Additionally, a requesting party need not accept only data that exists in traditional forms, but may discover the same information when it is electronically stored in a computer. *See, e.g., Adams v.*

*Dan River Mills, Inc.*, 54 F.R.D. 220 (W.D. Va.1972). Such information clearly falls within the scope of Rule 34, and is often more accurate and less expensive to produce than documents kept in manual record keeping systems.

This Court need not dwell on the benefits computers provide over traditional forms of record keeping. The revolution over the last fifteen years speaks for itself. From the largest corporations to the smallest families, people are using computers to cut costs, improve production, enhance communication, store countless data and improve capabilities in every aspect of human and technological development. Computers have become so commonplace that most court battles now involve discovery of some type of computer-stored information. Although parties in the past have been able sometimes to shift the majority of the costs of document production to the requesting party merely by making records available for inspection, that cost-shifting tactic is less available and less necessary when the information is stored in computers. Parties are hesitant to open up their computer banks for inspection pursuant to discovery requests, and such a process currently is impracticable because of the myriad of types of computers and the lack of expertise on the part of parties and their lawyers in computer technology and data processing. As a result, the requested party most often has no reasonable choice other than to produce the documentation in a comprehensible form by use of its own computer technicians.

Improvements in technology which advantage almost everyone have become commonplace and widespread, and because we live in a society which emphasizes both computer technology and litigation, the mix of computers and lawsuits is ever increasing. Accordingly, parties requested to produce computer stored data will have to shoulder the burden of showing "undue" expense or burden before courts should shift the costs to the requesting party.

## RULE 26(c): UNDUE BURDEN OR EXPENSE

Since cost-shifting by means of simply producing volumes of records for inspection by the other side may be or may become a thing of the past in this computer age, the only recourse a producing party has is to seek a protective order under Rule 26(c) for undue expense or burden in order to shift the financial burden to the requesting party or to limit discovery. Rule 26(c) commonly has been interpreted to grant courts the power to shift the financial burden of discovery where, in the court's discretion, such a shifting is warranted. *Sanders v. Levy*, 558 F.2d 636 (2d Cir.1977) (acknowledging that Rule 26(c) combined with Rule 34 allows the court to shift the expense of computer programming to the discovering party where the demand poses an undue burden or expense, but finding no abuse of discretion for declining to do so), *rev'd on other grounds sub nom.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

The Advisory Committee on the Federal Rules addressed the question of the undue burden and expense to a responding party:

> The burden thus placed on respondent will vary from case to case, and the courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party needs to check the electronic source itself, the court may protect respondent with respect to preservation of his records, confidentiality of non-discoverable matters, and costs.

This Advisory Committee statement, however, gives the Court no guidance as to how properly to determine whether the burden or expense is "undue" where discovery of computer stored information is involved. Defendant here suggests that the Court be only concerned with "the burden imposed upon the responding party if a protective order is not granted as compared with the burden imposed upon the requesting party if a protective order imposing conditions is granted." Defendant's Memo-

randum at page 5. At the same time, defendant argues that neither the amount of money involved nor the respective abilities of the parties to incur the expense (or bear the burden) should be considered by the Court in determining the outcome of a Motion for Costs. On the face of it, however, these matters seem to be pertinent, along with other factors, in determining the respective expense and burden to the parties. Assuming the relevance of the information sought and that it is otherwise discoverable, the expense and burden to the responding party should not only be balanced against the relative expense and burden to the requesting party, but such should be scrutinized for possible excessiveness.

Defendant relies primarily on two cases as support for a result in its favor. The first case, *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation v. Kerr-McGee Corp.*, 669 F.2d 620 (10th Cir.1982), involved a discovery request by the State of Florida to a non-party in the underlying antitrust litigation. The Federal District Court for the Western District of Oklahoma had entered a protective order wherein it conditioned discovery requested of a nonparty upon payment by the requesting party of the costs incurred by the nonparty. The Tenth Circuit noted that a literal reading of the discovery rules may not specify that a non-party is in a different position than a party to the action, but stated that:

> the fact remains that in responding to the present subpoena duces tecum, Kerr-McGee is performing no work that conceivably could inure to its benefit. In this regard, the Supreme Court, in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 [98 S.Ct. 2380, 57 L.Ed.2d 253] ... (1978) indicated that where a defendant in a proceeding performs the work necessary to respond to a subpoena duces tecum, his own case, to some degree at least, is benefited. The Court cited that fact as a reason for declining to shift costs under Fed.R.Civ.P. 26(d). Such reason is not present in the instant action.

669 F.2d at 623. Such reason is present in this action. Additionally, the Court in *Coordinated Pretrial Proceedings* did consider the requesting party's ability to bear the burden of the discovery request and found that the State of Florida was not penniless and was able to advance the costs. The Court found that the burden placed on the requesting party was not an impossible or even harsh one.

The second case defendant relies upon is *In re Puerto Rico Electric Power Authority*, 687 F.2d 501 (1st Cir.1982). That case involved an order of the District Court requiring the producing party to bear the cost of the translation of documents from Japanese to English or Spanish. Unlike the situation that exists with computer-stored information, the Federal Rules make no provision for lingual translations, and the first Circuit found the District Court to be without authority to require the producing party to bear the cost of translation of documents into a requesting party's native tongue under Rule 34. That situation does not exist in the instant action. Rule 34 does address the problems associated with computer-stored information and allows for production and translation of such information. Under the circumstances of the *Puerto Rico Electric Power Authority* case, it would be appropriate to characterize the expense of lingual translation as a "special attendant cost." This Court is not willing so to characterize the costs of translating computer data in this case.

This Court does not attempt to set forth an ironclad formula into which the facts of this or another case can be placed for determination of what "undue" means under Rule 34. Such a formula would be judicially imprudent and wholly impractical in view of the diverse nature of the claims, discovery requests and parties before the Courts in a variety of cases and situations. The question must be resolved on a case-by-case basis. *See Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220 (W.D.Va.1972). However, certain propositions will be applicable in virtually all cases, namely, that information stored in computers should be

as freely discoverable as information not stored in computers, so parties requesting discovery should not be prejudiced thereby; and the party responding is usually in the best and most economical position to call up its own computer stored data.

In the instant action, this Court has been persuaded by the following additional factors in exercising its discretion to deny defendant's motion to shift the costs of discovery: (1) The amount of money involved is not excessive or inordinate; (2) The relative expense and burden in obtaining the data would be substantially greater to the requesting party as compared with the responding party; (3) The amount of money required to obtain the data as set forth by defendant would be a substantial burden to plaintiffs; (4) The responding party is benefitted in its case to some degree by producing the data in question.

After weighing the factors, we conclude that the Court should not shift the cost of production to the plaintiffs in this case. Accordingly, defendant's Motion for Payment of Discovery Costs is denied.